[No. 2128.]

## JOHN LOYD v. THE STATE.

REMOVING MORTGAGED PROPERTY, ETC.—EVIDENCE—CHARGE OF THE COURT—NEW TRIAL—INDICTMENT for removing mortgaged property from the State with intent to defraud the mortgagee described the property as "one chestnut sorrel pony horse, nine years old, and fourteen hands high, and one Studebaker two horse wagon." Held that, in order to authorize a conviction, it was essential that the evidence should

support the descriptive averments of the indictment, at least as to some portion of the property, and the trial court erred in failing to instruct the jury as to the effect of a failure on the part of the State to adduce such proof. Note a state of proof under which the trial court erred in refusing to award the defendant a new trial, on account of the failure of the State to prove descriptive allegations.

APPEAL from the District Court of Red River. Tried below before the Hon. D. H. Scott.

The conviction in this case was for fraudulently removing from the State certain mortgaged property, with intent to defraud the mortgagee, etc. The penalty imposed upon the appellant by the verdict was a term of two years in the penitentiary.

The State first introduced in evidence the written mortgage executed by the defendant to one E. P. Foster, the said mortgage covering one chestnut sorrel pony horse, nine years old and fourteen hands high, and one Studebaker two horse wagon, and certain crops, etc., to secure to the said Foster the defendant's certain indebtedness of one hundred dollars, the said mortgage being executed on the twenty-sixth day of November, 1884.

Mr. Lewis testified, for the State, that, in February and March, 1885, he ran Townsend's ferry across the Red river, in Red River county, Texas. Between midnight of February 28 and March 1, 1885, the defendant came to that ferry and asked to be put across the river into the Indian Territory. Witness refused to put him across. Townsend's ferry was two or two and a half miles distant from Ford's ferry.

Mr. Ford testified, for the State, that he ran a ferry across the Red river in Red River county, Texas. On or about February 1, 1885, about thirty minutes after sunrise, the witness put the defendant, his family, wagon and team across Red river from Red River county, Texas, into the Indian Territory. The defendant's wagon was drawn by a sorrel horse and a mule. Witness did not observe the wagon close enough to be able to testify that it was in fact a two horse wagon or whether it was properly a four horse vehicle, though drawn by two animals. He did not observe the pattern of the wagon. The horse attached to the wagon was a light sorrel, with light mane and tail, some fourteen or fourteen and a half hands high. Witness could not state the horse's age. He was was not a chestnut sorrel. A chestnut sorrel horse has a black mane and tail.

Dock Berry testified, for the State, that he had known the defendant for three or four years, during a part of which time witness and defendant lived on Doctor E. P. Foster's farm in Red River county. At the time, and for some time before he left Texas, the defendant owned a two horse wagon, a description of which witness could not give. He also owned a light sorrel pony horse, which horse had a light mane and tail. Witness could not describe the horse by height and age. He was not, however, a chestnut sorrel. A chestnut sorrel horse has a black mane and tail, and a darker body than a sorrel horse. The color of a sorrel horse is darker at certain periods of the year than at others. The witness was at the defendant's house on the night before the defendant left Texas. Defendant said that he was going to leave; that he was going "back to the rocks." He said that he came from Polk county, Arkansas, and was going back there. It was generally understood in the community that the defendant was going to leave. When witness went back to defendant's house on the next day he could not find the defendant and understood that he had left the country.

E. P. Foster was the next witness for the State. He testified that he was the mortgagee named in the mortgage in evidence. The mortgage was executed in November, 1884. The description of the property as it appears in the mortgage, was the description furnished by the defendant. Witness had probably seen the property, but was unable to particularly describe the horse or the wagon. The mortgage was executed to secure advances to the amount of one hundred dollars, to be made by the witness to the defendant, who was to make a crop on the witness's place. Between sixty and seventy dollars had been advanced when the defendant left the country on March 1, 1885. No part of the said sixty or seventy dollars had been paid at the time of the defendant's removal, and the mortgage was then in full force and effect. Some time in September, 1885, witness learned of the defendant's presence in Polk county, Arkansas, which was understood to have been his former home. In April, 1886, witness obtained a requisition from the Governor of Texas on the Governor of Arkansas, with which requisition he went to Arkansas, and, through the proper channels, secured the arrest of the defendant in Polk county, Arkansas, and brought him back to Red River county, Texas, and placed him in jail, where he has been ever since. The defendant was an ignorant, weak minded man, but had ample sense to attend to

ordinary business. The strongest indication of the defendant's lack of sense was, in the opinion of the witness, in the very fact that, removing from Texas under the circumstances he did, he went back to his old home in Polk county, Arkansas. Defendant lived on the witness's place when he executed the mortgage, and, so far as the witness knew, owned but one horse and one wagon, and they were the ones included in the mortgage. Witness had never seen or heard of the horse or wagon in Texas since they were taken away by the defendant. Defendant had never paid a cent of his indebtedness to the witness, and the mortgage was still binding.

The defense offered no testimony, but in the motion for new trial raised the question discussed in the opinion.

*Sims & Wright,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is for removing from the State mortgaged property with the intent to defraud the mortgagee. In the indictment, and also in the mortgage, the property is described as "one chestnut sorrel pony horse, nine years old, and fourteen hands high, and one Studebaker two horse wagon." This particular description of the property was necessary in the indictment, because it was the particular description of the property mortgaged. Such description can not be regarded and treated as surplusage. It identifies the offense charged, and must be proved, if not as to all, at least as to a portion of the property. (Warrington v. The State, 1 Texas Ct. App., 168; Rangel v. The State, Id., 461; Allen v. The State, 8 Texas Ct. App., 360; Cameron v. The State, 9 Texas Ct. App., 336; Simpson v. The State, 10 Texas Ct. App., 681; Davis v. The State, 13 Texas Ct. App., 215.)

In this case the descriptive averments in the indictment are not met and sustained by the evidence. As to the horse, the evidence is that the one removed from the State by the defendant was a *sorrel,* not a *chestnut sorrel,* as described in the indictment and mortgage, and it was further proved that there is a marked difference between the colors of *sorrel* and *chestnut sorrel.* As to the wagon, it was not proved that it was a Studebaker, nor even that it was a two horse wagon. These defects in the evidence were called to the attention of the court by a

special instruction requested by defendant, which was refused, and also in defendant's motion for a new trial.

We are of the opinion that the court erred in not instructing the jury as to the effect of a failure on the part of the State to prove the descriptive averments in the indictment, at least as to some portion of the property, and again erred in refusing to grant defendant a new trial, upon the ground that the State had failed to make such proof. Because of these errors the judgment must be reversed and the cause remanded. As to the other matters complained of by defendant, we perceive no error.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered January 12, 1887.