COMMONWEALTH *vs.* MARY E. MEAD.

Essex.    November 8, 1893. — January 4, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Embezzlement — Motion to quash — Allegations in Indictment — Joint Interest in Savings Bank Deposit.*

The allegation in an indictment that the defendant had fraudulently converted certain promissory notes current as money to his own use is a sufficient allegation, if one is necessary, that he had not fully performed his trust or kept the money safely, and it is unnecessary to allege a demand for the return of the money.

The finding of the jury that of the thousand dollars deposited in a savings bank in the name of A., for the fraudulent conversion of which the defendant was indicted, five hundred dollars was the property of A. and five hundred of B., must be taken as meaning that A. and B. were jointly interested as owners to the extent of five hundred dollars each in the deposit; and it being competent for the jury to find that the money was withdrawn with the consent of A., and that when it was finally given by B. to the defendant it was received as the property of A. and B., to be kept by the defendant for them as their agent or bailee, it is immaterial that the defendant afterwards deposited it in another savings bank, and that the money eventually converted by the defendant did not consist of the identical bills which the defendant had deposited.

INDICTMENT alleging that the defendant on December 3, 1885, "did embezzle and fraudulently convert to her own use certain promissory notes current as money in the Commonwealth, and all of the value of one thousand dollars, a more particular description of which is to said jurors unknown, of the property, moneys, goods, and chattels of Jane Mooney and Mary Mooney, the said promissory notes being then and there the subject of larceny, and the said promissory notes having theretofore, to wit, on the third day of December in the year of our Lord one thousand eight hundred and eighty-five been there delivered to the said Mary E. Mead, otherwise called Mary E. Rowell, by the said Jane Mooney and Mary Mooney in the trust and confidence and with the direction that the said Mary E. Mead, otherwise called Mary E. Rowell, would safely keep the same as and for the property of the said Jane Mooney and Mary Mooney, and return the same to the said Jane Mooney and Mary Mooney on their demand, and the said promissory notes and each thereof having been then and there received by the said Mary E. Mead,

otherwise called Mary E. Rowell, in the said trust and confidence and with the said direction."

At the trial in the Superior Court, before the jury was impanelled, the defendant moved to quash the indictment " for the reason that no offence prohibited by law was substantially set forth therein, in that it did not appear that the trust set forth had not been fully performed by the defendant, and did not appear that the defendant did not safely keep the money alleged to have been delivered to her in trust, and it did not appear that Jane Mooney and Mary Mooney demanded that the defendant would return said money, or any part thereof, to them or either of them"; but *Sherman,* J. overruled the motion; and the defendant excepted.

Jane Mooney, a witness for the Commonwealth, testified that in September, 1885, a deposit of one thousand dollars was made in her name in the Danvers Savings Bank; that five hundred dollars of this money was hers, and five hundred belonged to her sister, Mary Mooney; that in October, 1887, she was taken sick with paralysis, and was at the Salem Hospital for about three months; that she had no knowledge of the money being taken from the Danvers Savings Bank; and that she signed no order to have the money taken, and authorized no one to withdraw the money, or in any way to exercise any control over it.

Mary Mooney, a witness for the Commonwealth, testified that at the time her sister was in the hospital she, Mary, suggested to her sister that it would be well to withdraw the deposit of one thousand dollars from the Danvers Savings Bank in order to secure it more effectually, but that her sister refused to talk about it; that the subject was never afterwards mentioned between them; and that her sister gave her no authority to withdraw money, or to make any arrangement with any one as to holding the money for the benefit of any one. The witness further testified that she had a conversation with the defendant, in which she told her that her brother's wife had said that her brother was going to attach the money; that a day or two after she was at the defendant's house; that the defendant produced an order on the Danvers Savings Bank dated December 3, 1885, signed by Jane Mooney by her mark, as follows: " Pay to Mary E. Mead or bearer, on account of deposit No. 6520, one thou-

sand dollars " ; that the witness signed the order as a witness thereto ; that she and the defendant went to the Danvers Savings Bank and withdrew the money, which was paid to the defendant in bills ; that she and the defendant went away from the bank together, and the defendant paid over the whole of the money to her ; that she kept it for a day or two, then gave it back to the defendant, telling her to keep it for the benefit of herself and her sister ; that she afterwards went with the defendant to the Salem Savings Bank ; that the defendant then deposited the money in her own name in the Salem Savings Bank ; and that nothing further was said between them in relation to the terms by which the money was to be kept by the defendant. The witness also testified that, before withdrawing the money from the Danvers Savings Bank, her sister Jane had given her the key to her trunk, which was in the defendant's house ; and that she unlocked the trunk, and took the Danvers Bank deposit-book in which the thousand dollars was entered from the trunk, and took the same to the bank with the defendant.

There was evidence offered by the Commonwealth tending to show that, soon after the money was received by the defendant, she married and went to California without informing either Jane or Mary Mooney of her marriage, or of her intended moving to or her whereabouts in California ; and that the money was subsequently demanded of the defendant in California, who could not pay it because it had all been expended.

The defendant testified that during the sickness of Jane Mooney she was frequently at the hospital, and had various conversations with her in relation to the money ; that Jane said she did not expect to get well ; that she told the defendant to take the money, and if she wanted to use it, to use it ; that she would prefer throwing the money into the fire to having her brother, who had squandered one fortune, get hold of it.

Evidence was also introduced tending to show that the money was once withdrawn from the savings bank by the defendant, and was again deposited by her.

The defendant requested the judge to rule that the evidence was insufficient to warrant a conviction of the defendant ; but the judge refused so to rule, and submitted the case to the jury upon instructions, to which no further exception was taken.

The judge also submitted to the jury the question whether, upon the evidence, the money deposited in the Danvers Savings Bank was the property of Jane Mooney alone, or Jane Mooney and Mary Mooney. The jury found that five hundred dollars of the thousand was the property of Mary Mooney, and five hundred was the property of Jane Mooney.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*H. P. Moulton*, for the defendant.

*W. H. Moody*, District Attorney, for the Commonwealth.

MORTON, J. The motion to quash was rightly overruled. The allegation in the indictment that the defendant had fraudulently converted the property to her own use was a sufficient allegation, if one was necessary, that she had not fully performed the trust nor kept the money safely. It was unnecessary to allege a demand for the return of the money. *Commonwealth* v. *Tuckerman*, 10 Gray, 173. *Commonwealth* v. *Hussey*, 111 Mass. 432.

The jury found that of the one thousand dollars deposited in the Danvers Savings Bank five hundred was the property of Mary Mooney and five hundred of Jane Mooney. This finding must be taken as meaning that Jane and Mary were jointly interested as owners to the extent of five hundred dollars each in the deposit. Although the deposit stood in the name of Jane, it would have been competent for the bank to show in an action by Jane to recover the whole of it that five hundred dollars belonged to Mary, and that in depositing it she acted as the agent of Mary. *McCluskey* v. *Provident Institution for Savings*, 103 Mass. 300. *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228, 233. It was also competent for the jury to find that the money was withdrawn with the consent of Jane, and that, when it was finally given by Mary to the defendant, it was received by her as the property of the two sisters, to be kept by her for them as their agent or bailee. The fact that the defendant afterwards deposited it in the Salem Savings Bank was immaterial, as was also the fact that the money which was eventually converted by her to her own use did not consist of the identical bills which she had deposited. " The change of one parcel of bank bills for another parcel, or for their equivalent value in any species of currency, can have no effect upon the rights of the

parties in relation to the question of ownership." *Commonwealth v. Tuckerman,* 10 Gray, 173, 196. There was evidence on which the jury could properly find that the property which the defendant converted was the property of Jane and Mary Mooney, and that she embezzled the same.                *Exceptions overruled.*