[No. 8052. Department Two. November 24, 1909.]

THE STATE OF WASHINGTON, *Respondent*, v. A. P. LEONARD, *Appellant*.[1]

INDICTMENT AND INFORMATION—EMBEZZLEMENT BY PUBLIC OFFICER —DISTINCT OFFENSES—CERTAINTY. An information charging a public officer with the embezzlement of fees collected in the sum of $165, charges but one offense, and is sufficiently direct and certain as regards the crime charged, although the sum represented different fees collected at different times.

CRIMINAL LAW—TRIAL—OFFENSE UNDER DIFFERENT STATUTES— ELECTION. In a prosecution for embezzlement of fees by a county auditor, it is not error to refuse to require the prosecuting attorney to elect under which of several statutes providing different penalties he will proceed, the acts charged being punishable under any of them.

EMBEZZLEMENT—OF FEES BY SALARIED COUNTY OFFICERS—SUFFI-CIENCY. An information charging that the defendant is a county auditor who receives a salary and that he collected fees and refused to account for and embezzled the same, charges an offense under Bal. Code, § 1606, making it embezzlement for any salaried county officer to receive fees by virtue of his office and fail to pay the same to the county treasury.

SAME—DEMAND—NECESSITY. In a prosecution of a salaried county auditor for the embezzlement of fees which came into his hands by virtue of his office and which he failed to pay to the county treasurer, it is not necessary to show that any demand was made upon him for the payment of the fees.

SAME—INTENT—INSTRUCTIONS. In a prosecution of a salaried county officer for the embezzlement of fees which he failed to pay

[1]Reported in 105 Pac. 163.

into the county treasury, the proposition that a criminal intent is essential is sufficiently covered, where the jury were so instructed, and that they could not convict if the failure to pay was due to neglect or carelessness without an intent to defraud the county.

SAME—EVIDENCE—SUFFICIENCY. The evidence is sufficient to sustain a conviction of embezzlement by a salaried county auditor for failing to pay over $165 collected for hunting license fees, where there was no question over the defalcation, and no intricacy in the bookkeeping, and the defendant had stated that he knew of the shortage and exactly how much it amounted to; although the defendant after his term had expired, had expressed a willingness to make good the deficiency, the statute requiring monthly payments of such collections.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered November 21, 1908, upon a trial and conviction of embezzlement. Affirmed.

*Charles E. Miller, C. C. Dalton,* and *W. S. Fulton,* for appellant.

*John I. O'Phelan,* for respondent.

DUNBAR, J.—On July 22, 1908, the prosecuting attorney of Pacific county filed the following information against the appellant in the superior court of said county, the charging part of which is as follows:

"The said A. P. Leonard on or about the 6th day of January, 1907, at the county of Pacific and state of Washington, was the duly elected, qualified and acting county auditor in and for the county of Pacific and state of Washington, and as such county auditor was not allowed by law to be paid or receive any money, fees, or compensation for his services as such county auditor, except the salary provided and allowed to be paid him by law as such county auditor. That as such county auditor it became and was his duty, imposed by law, to receive certain moneys, fees, and deposits by virtue of said office; and that on or about said 6th day of January, 1907, at the said county of Pacific and state of Washington, the said A. P. Leonard, then and there being, did receive and there was paid to him, as such county auditor and by virtue of said office, the sum of one hundred and sixty-five ($165)

dollars, lawful money of the United States, of the value of one hundred and sixty-five ($165) dollars, which said prosecuting attorney is unable to more particularly describe, the same being money, fees, and deposits which was paid to him, the said A. P. Leonard, as county auditor of said Pacific county for 'Hunters' Licenses' and should have been paid and delivered to the treasurer of said Pacific county by him, the said A. P. Leonard, on the first Monday of each month, after receiving the same. That said A. P. Leonard, as such county auditor, having received the said sum of one hundred and sixty-five ($165) dollars, as aforesaid, at and in said county and state, as aforesaid, then and there being, did then and there, on the 6th day of January, 1907, as aforesaid, unlawfully, wilfully, knowingly, fraudulently and feloniously fail to pay the said sum or any portion thereof to the said county treasurer, as required by law, but unlawfully, wilfully, knowingly, fraudulently, and feloniously, did take and convert to his own use and embezzle the said sum of one hundred and sixty-five ($165) dollars, received by him as aforesaid. That the said sum embezzled, as aforesaid, was the money and property of the county of Pacific and state of Washington, and that said A. P. Leonard did, by said failure to pay said sum to said treasurer as aforesaid, and by converting the same to his own use, as aforesaid, commit a felony, contrary to the statutes in such cases made and provided and against the peace and dignity of the state of Washington."

To this information the appellant interposed a demurrer, upon the following grounds, (1) that the said information does not substantially conform to the requirements of the code of this state; (2) that more than one crime is charged against this defendant; and (3) that the facts charged in said information do not constitute a crime against the laws of the state of Washington. The demurrer was overruled, plea of not guilty entered, and trial had, which resulted in a verdict of guilty. Judgment and sentence followed, notice of appeal was given, and the proceeding is now in this court on appeal.

The errors assigned are, (1) the overruling of the demurrer to the said information; (2) not requiring the prose-

cuting attorney to elect and designate under what statute he was prosecuting said action; and (3) the refusal of the court to give certain instructions. Chapter 147 of the Laws of 1905, page 277, establishing a license for hunters, provides that it shall be unlawful for any person to hunt etc., without first having obtained a license therefor from the county auditor, prescribing the payment of one dollar for such license by residents of the state, five dollars for nonresidents, and $50 for any nonresident alien. The statute also provides that the county auditor shall pay to the county treasurer all such fees collected by him, to be placed in the game protection fund to be used by the county commissioners for the propagation and protection of the game of such county. It is urged by the appellant that more than one crime is charged in this information, because the $165, it is argued, might have included one hundred and sixty-five licenses at one dollar apiece, or thirty-three licenses for nonresidents and three licenses for a nonresident alien, and fifteen resident licenses or three nonresident licenses; that the testimony in the case was that the amount charged as having been embezzled represented one hundred and sixty-five licenses, and that they were issued at different times and to different persons; that the embezzlement, if any, therefore constituted one hundred and sixty-five offenses, each offense taken separately being a misdemeanor; and that, inasmuch as Bal. Code, § 6844 provides that the indictment or information must be direct and certain as regards the crime charged, and that the information must charge but one crime and in one form only, the information is insufficient. This contention is answered in 7 Ency. Plead. & Prac., p. 430, as follows:

"In an indictment against the public or other officer, great looseness is permitted in the description of the money or funds embezzled, because of the necessity of the case, and it is unnecessary to specify with certainty the particular kind of money or funds, whether gold or silver coins, or legal tender notes, or to give the denomination of each coin or

note, or to specify from whom or at what particular time the money ·was received, but the indictment should be certain to the extent of alleging the embezzlement of a particular sum of money."

This is almost the universal announcement by courts and law writers on this subject, and arises from the·necessity of the case, as it would be impossible to trace the particular fund or particular act or particular requirement from which the fund came, in the case of an officer handling public funds coming through so many avenues and through so many different individuals.

A good case on this subject is *People v. McKinney*, 10 Mich. 53, where the court, in discussing this question and in drawing a distinction between embezzlement by a public officer where the public at large can exercise no control or constant supervision over him nor assume the direct custody of the funds, and embezzlement by a private individual where there can be such constant supervision by the owner of the funds, said, at page 91:

"We cannot, therefore, suppose the legislature intended to require proof of the identity of the money embezzled by the treasurer, or of the kind of funds of which it consisted, or of the particular source from which it was received, without supposing they intended to render the provision they were enacting a dead letter."

See, also, *State v. Dix*, 33 Wash. 405, 74 Pac. 570; *State v. Bogardus*, 36 Wash. 297, 78 Pac. 942.

It is also urged that, inasmuch as this information might have been filed under any one of several sections of the code, viz: Bal. Code, §§ 7119, 7123, 1606, and 7213 (P. C. §§1983, 4004, 1726), it was error not to require the prosecuting attorney to elect and designate under which statute he would proceed. It makes no difference to the appellant that the penalty is different in the different sections. What concerns him are the acts with the commission of which he is charged. *State v. Isensee*, 12 Wash. 254, 40 Pac. 985.

But counsel insists that, while the information was probably filed under the provisions of § 1606, the objection to the prosecution under that statute is that there is no analogy between the subject-matter of the statute and the information. But we think the analogy is very strong. Section 1606 provides that "any county officer who is paid a salary, who shall fail to pay to the county treasury all sums that shall have come into his hands for fees and charges in his office, or by virtue of his office, whether under the laws of this state or of the United States, shall be deemed to be guilty of embezzlement," etc. The information would seem to be drawn exclusively under this section, for it charges the appellant with being a county officer who receives a salary, with receiving money for fees, and for failing to pay the same over to the county treasurer. We hardly see how the information could be any more specific and certain with reference to the requirements of § 1606.

The appellant's third proposition is that, where the moneys are collected in a fiduciary capacity, proof of demand by one authorized to receive payment of such funds is necessary before there can be a conviction for criminal conversion. The appellant has cited no authorities to sustain this proposition, nor do we think that any can be found. It would be a direct encouragement to laxity in official duty, if not to absolute dishonesty, to put any such construction upon the law. Under such construction the officer could retain money that came into his possession for an indefinite length of time. If afterwards, by experting the books or from any investigation, it was found that such moneys had been retained, all he would have to do would be to pay the same upon demand made. If the law were to be construed in this manner, the public funds would become a prey to plunderers and dishonest officers.

The fourth proposition is that the failure of a public officer to pay over funds coming into his possession by virtue of his office must be with a criminal intent to convert the same

to his own use. This proposition is undoubtedly correct, but the jury were instructed on this subject as follows:

"An essential element in the crime charged in this case is a felonious intent, and before you can convict the defendant you must find from the evidence that he intended to convert to his own use the money in question, and to cheat, wrong, and defraud the county of Pacific out of the same. If you find from the evidence that the failure of the defendant to pay over this money was due to neglect and carelessness, and that he had no intention of cheating and defrauding the county out of the same, your verdict must be not guilty."

This instruction was given at the instance of the defendant, and the court gave the same instruction in substance on its own motion.

It is contended, also, that the evidence was not sufficient to sustain the verdict; that it was a case of faulty bookkeeping, and that there was no criminal intent shown. The testimony in the case shows that the license fees were for one dollar licenses, or resident licenses, and that the only book kept was one containing the licenses, with a stub attachment to each license issued. There was no intricacy about this bookkeeping. It was a simple proposition of addition and subtraction. The stubs showed so many licenses issued at one dollar per license. The books showed so many dollars turned over to the treasurer from such licenses, and in this instance showed that there had been $165 more paid in to the auditor than was turned over to the treasurer. In fact, the appellant himself makes no contention that there was any intricate bookkeeping, or that he was misled in that respect, for when asked whether the books showed accurately the amount received by him, he said they did; and in answer to the question: "Any ordinary accountant could take these books and ascertain the amount received?" the answer was: "They certainly could."

The contention of the appellant is that the law prescribed no particular time at which the money should be turned over

by the auditor to the treasurer. Bal. Code, § 1598 (P. C. § 4003), is as follows:

"Every county officer, who, by the laws of this state is allowed a salary, shall, on the first Monday of each month, pay into the county treasury all moneys and sums which have come into his hands for fees and charges in his office, or by virtue of his office, during the preceding month."

Even if there were no statute which was applicable to the case, common sense would compel the construction that, at least at the end of the officer's term, when his successor becomes custodian of the funds and he passes out of official existence, all the moneys belonging to the county should be turned over to his successor.

The testimony is very brief, but it is sufficiently convincing, it seems to us, to support the verdict of the jury. There was no question over the defalcation, it being stipulated that the appellant was the county auditor at the time alleged, and that the $165 due on the license fund had not been turned over to the treasury. The expert accountant testified that the appellant had told him that, if he found any discrepancy, he would like to have an opportunity to pay it before the commissioners met. He also said that the appellant had told him that he knew that there was a deficiency, saying: "Yes, I know; I know what it is. It is right. I took it. I have been an Indian, but am going to make it good. That is all anybody can ask"; that appellant also told him that he had always intended to pay the money in and that he had used it, that he had provided $5,000 in his will to reimburse the county in case of his death; and that, when the accountant had the figures complete he asked him to go over it, but appellant said it wasn't necessary for him to go over it for he knew just exactly what it was, saying: "A man, of course, always knows what he has done." In fact there was ample testimony, if the jury believed it, to warrant the conclusion that the appellant had appropriated this money to his own use knowingly and wilfully; and this testimony was not dis-

puted, the testimony of the appellant himself not being such as would tend to establish a belief in his innocence.

There being no error in the record, the judgment is affirmed.

RUDKIN, C. J., CROW, MOUNT, and PARKER, JJ., concur.