STATE, Respondent, v. MILLARD, Appellant.

(138 N. W. 366.)

1. **Embezzlement—Evidence—Preliminary Question—Admissibility.**

In the trial of a farm manager for embezzling a certain number of hogs between December 1st and the 15th of February following, evidence of the owner showing the number of hogs he had on the premises on or about December 1st was admissible, in answer to a preliminary question, as showing the number of hogs in defendant's possession belonging to witness, in laying foundation for proof of the number missing.

2. **Embezzlement—Information—Variance.**

An information charged embezzlement of "55 head of red Duroc Jersey Hogs;" witnesses spoke of them as "red hogs" and as "Duroc Jersey." Held, there was no substantial variance between allegation and proof, though the prosecuting witness admitted the hogs were not pure bred Duroc Jerseys.

3. **Embezzlement—Value of Property—Instructions.**

On a trial for embezzling hogs the court instructed the jury that the value of the hogs was material only to ascertain whether it was greater or less than $20., in fixing the degree of the offense. Held, the instruction could not have led the jury to believe the trial was one in a civil action, for recovery of damages.

4. **Embezzlement—Proof of Age—Sufficiency.**

Evidence in a trial for embezzling hogs, that defendant had been in prosecuting witness' employ as manager of his farm for six years and was a man of family residing thereon, was sufficient, in absence of any evidence on part of defendant on the subject, to sustain a finding that he was more than 18 years of age.

5. **Embezzlement—Requisites of Proof—Sufficiency of Evidence.**

Where the evidence showed defendant came within one of the specified classes of persons named, or occupied one of the fiduciary relations specified by statute, that the property converted by him was such in character as to be within protection of law, that it belonged to his employer, that it was in defendant's possession as manager thereof for and was held by him for and on account of employer, and that his disposition thereof was without the knowledge or consent of employer owner; held, sufficient to sustain the jury's finding of guilty of embezzlement.

6. **Criminal Law—Instructions—Request for Instructions—Circumstantial Evidence.**

Failure to instruct as to nature of circumstantial evidence is not reversible error, in absence of a specific request therefor.

**7.   Embezzlement—Demand of Property—Proof—Allegation.**

In a trial of a farm manager for embezzling hogs of his
employer, the state need not prove a demand made upon de-
fendant for the property.   Sec. 626, Pen. Code, requires no
such demand and refusal, and none is alleged in the infor-
mation.

(Opinion filed October 25, 1912.   Rehearing denied January 6, 1913.)

Appeal from Circuit Court, Minnehaha County.   Hon. JOSEPH
W. JONES, Judge.

Defendant, J. R. Millard, was convicted of embezzlement;
and from such judgment and from an order denying a new trial,
he appeals.   Affirmed.

*Sam H. Wright,* for Appellant.

The Court erred in overruling the objection of the defendant
to the following question upon the grounds therein stated:

Q.   State what quantity of hogs you had upon the premises,
described here, on or about the first day of December, 1911?   Ob-
jected to as incompetent, irrelevant and immaterial under the alle-
gations in this information, and especially for the reason that the
allegation charges specifically that these certain hogs were turned
over by Mr. Clark to the defendant.   Objection overruled.   Ex-
ception allowed.   A.   I had 142 head.

The point I desire to make with reference to this assign-
ment is that since the information stated that the hogs in ques-
tion were received by the defendant in his possession, control and
care between the first day of December, 1911, and the 15th day
of February, 1912, the State was permitted to change the issue in
the case.   It was not alleged in the information that the complain-
ing witness had any specific number of hogs on his premises with-
in the dates named, but in substance he turned over said hogs be-
tween the dates named, therefore, a vital and positive variance was
injected into the issues by the the ruling of the Court which we
are now assailing.   I will not cite authorities in connection with
this assignment, but will repeat at this time Assignment No. 2,
which reads as follows:

"When the State rested the defendant moved the Court as
follows: To advise the jury to return a verdict of not guilty
in favor of the defendant upon the following grounds: First, the
allegation in the information being that E. D. Clark turned over
to the defendant between the first day of December, 1911, and

the 15th day of February, 1912, the hogs described in said information, and the uncontradicted testimony disclosed the fact to be that none of said hogs were either within the dates named or at any other time turned over to the defendant, and that there is a fatal variance of material character between the allegation and the proof. Second, that since the information describes the alleged embezzled hogs to have been fifty-five head of red duroc Jersey hogs and the testimony failed to show that said hogs were Jerseys, but showing that they were not full blooded or pure bred red Duroc Jersey hogs, that there is a fatal variance between the allegation and proof. Motion overruled. Exception allowed."

It will be observed from this record that the evidence fails to disclose that the hogs in question were Red Duroc Jersey, but Mr. Clark, the owner, testifies as shown on page 13 hereof as follows: Q. "Do you know of your own knowledge that these hogs that are described in this information were in fact pure bred Duroc Jersey hogs? A. They were not pure bred."

The fact then appearing undisputed that the complaining witness, Clark, never turned a single one of the hogs alleged to have been embezzled over to the defendant, and that with a similar positiveness they were not Red Duroc Jerseys, our contention should have been sustained. The underlying principle which controls this contention was ably discussed and in so far as this jurisdiction is concerned was settled in the case of State v. Ham. 21. S. D. 598. It is true that in that case the question was one of failure of description in ownership, but as suggested above, the principle is the same. The prosecuting attorney saw fit in his information to charge that these hogs were turned over to the defendant. He also charged that they were Red Duroc Jerseys and his evidence fails to meet his allegation relative to either charge. This being so, it seems to me that either the Ham case will have to be overruled or our appeal sustained. Loyd v. State, 3 S. W. Rep. 670 (Texas).

The writer of this brief wrote the brief in the said Texas case, although he did not try the same in the lower court.

The 3rd and 4th assignments of error which appear on page 29 hereof are as follows and are submitted together:

3. "The question propounded by the jury to the Court as shown at the bottom of page 21 and the top of page 22 of the

transcript discloses within and of itself the fact that the jury were impressed with the belief and idea that they were trying a civil action for damages for the conversion of the hogs for the embezzlement of which the defendant was charged."

4. "For the further and additional reason that the entire record carries with it and manifests the controlling thought that the jury, instead of having in mind the trial of the defendant for the commission of a public offense, were impressed with the idea and thought that the complaining witness, Clark, had an action pending for civil damages, and the verdict itself as rendered under the instructions of the Court emphasizes this contention."

The indexed record herein shows this question to have been raised on pages 26-7. These two assignments raise a novel question, and one which I have not been able to find any authority upon.

The form of the verdict itself emphasizes the idea that the jury thought it was trying a civil action. Double emphasis is added to this theory wherein the Court charged the jury as shown on page 26 of the record as follows: "That you may better understand it when you retire I send out with you two forms of verdict in writing. One in case you find conviction and one in case you find acquittal. If you find a verdict of acquittal use that form. If you find the other verdict you will fix the amount of the value of the property and let the verdict be signed by your foreman and return in to court. Of course, you will have to bring it in to court before you separate."

Assignment 5. Assignment number five which appears on page three of the record is as follows: "The evidence failing to disclose that the defendant was over the age of eighteen years, the evidence is insufficient to sustain the verdict herein, and more over, the evidence is insufficient when compared with the information to sustain the verdict."

This discloses that this appellant is being prosecuted under section 626 of the Revised Penal Code of this State, and there is not one scintilla of evidence in the entire record to show his age, and this being so, there is no escape from a reversal on this appeal unless your honors should refuse to follow the decision of the Supreme Court in North Dakota in the case of State v.

Collins, based upon the same statute and reported in 61 N. W. Rep. 467.

When this entire record (and we have presented it in this brief) is looked to it will be seen that no one ever saw the defendant take any of the Clark hogs from the farm at Sioux Falls. While he was seen, according to the record, taking hogs to Sioux Falls, no one ever at any time identified any of them as belonging to the prosecuting witness, Clark. Neither does the record disclose that the defendant at any time ever admitted to any one that he had disposed of any of Clark's hogs.

This being so, is there sufficient evidence in the record to sustain the conviction? Men cannot be convicted upon mere inferences or conjectures, but there must be substantive evidence in order to sustain a verdict. Does it appear in this case? No demand was ever made upon the defendant for the possession of these hogs nor the refusal to comply therewith.

At most nothing more than the merest circumstantial evidence was submitted for the consideration of the jury to the effect that the defendant committed the crime charged in the information, and such being the fact, I claim that there was fundamental error in failing to charge upon circumstantial evidence, and the defendant excepted to the charge for that reason as shown upon page 26 of the record. See Levine v. State, 3 S. W. Rep. 660; Groom v. State, 3 S. W. Rep. 669.

In the last named case the Court of Criminal Appeals of Texas laid the rule to be: "But the liberty of a citizen cannot be taken away by the mere inference of a material fact; especially when such fact, did it exist, could easily be proved."

*Royal C. Johnson,* Attorney General, and *Martin Bergh,* State's Attorney, for the State.

The evidence shows the hogs in question were in defendant's possession between December 1 and 15, 1911, when he and his employer viewed them; that the defendant removed a large quantity of hogs off his employer's premises between that date and February 15, 1912; and that on the last named date the hogs charged as embezzled were not in defendant's possession, nor could he account for their disappearance.

The time at which the defendant received the property with the embezzlement of which he is charged need not, it seems, be

stated. 7 Ency. Pl. & Prac. 445, citing: State v. Noel, 5 Blackf. (Ind.) 548.

It is further claimed in this Assignment of Error that there is a fatal variance in the description of the property embezzled between the information and the proof. The hogs are designated in the information as "Red Duroc Jersey Hogs," and Mr. Clark, the employer, called them "Duroc Jersey Hogs" in his testimony; other witnesses designated them as "red hogs." There is certainly no such variance herein as could fail to notify the defendant of the particular hogs with the embezzlement of which he is charged. Alderman v. State, 57 Ga. 367; Sanders v. State, 86 Ga. 717, 12 S. E. 1058; Commonwealth v. Shaw, 145 Mass., 349; Commonwealth v. Parker, 155 Mass. 526.

The precaution of the trial court in asking the jury to fix the value of the property may not have been necessary, inasmuch as the amount stated in the information would control, unless disputed and disproven. The information is a part of the record of which the court will take judicial notice on appeal. This pertains to the value of the property therein alleged to have been embezzled. Harris v. State, 21 Tex. App. 478.

As a general rule the value of the article or property is immaterial and not an element of the crime, although the property must not be absolutely valueless. But in jurisdictions where the offense is divided into degrees, or into felony and misdemeanor, according to the value of the property, the value is material, and must be proven in order to show the degree or grade of the offense. 10 Am. & Eng. Ency. Law (2nd. Ed.) 985.

The action of the trial court as regards this point was entirely harmless, and could not have misled the jury.

The evidence in this case shows that the defendant had worked for his employer from 5 to 6 years up to the time of his arrest; that he was a man of family and lived with his family on the place; that he had full charge of a large farm, with a number of employees, a large dairy business, and other important affairs: and that he was not an apprentice of his employer. These facts are believed to be sufficient, even if it was necessary for the state to prove this negative fact as to age, to establish that the

defendant was over the age of 18 years at the time of the commission of the offense charged.  State v. Ingraham, 136 N. W. Rep. 258.

Full and conclusive proof, when a party has the burden of proving a negative, is not required, but even vague proof or such as renders the existence of the negative probable is, in some cases, sufficient to change the burden to the other party.  People v. Pease, 27 N. Y. 45.

The principle that the burden of proof in criminal cases is on the state relates to the establishment of the corpus delicti, or the defendant's complicity, but, when he relies on distinct, substantive matter of exemption or immunity, such as nonage, he has the burden of proving it.  State v. Arnold, 35 N. C. 184; Ake v. State, 6 Tex. App. 398; Hozier v. State, 6 Tex. App. 501.

When the subject matter of a negative averment in an indictment relates to the respondent personally, or lies peculiarly within his knowledge, the averment will be taken as true, unless disproved by him.  State v. McGlynn, 34 N. H. 422; State v. Keggon, 55 N. H. 19; Lambeth v. State, 3 Tenn. Cas. 754; Grillo v. State, 9 Ohio Cir. Ct. R. 394.

As a general rule, to make out a case of embezzlement under the statutes, it is necessary to show: (1) That the accused falls within one of the classes of persons named, or occupies one of the fiduciary relations specified in the statute; (2) That the thing converted or appropriated is of such a character as to be within the protection of the statute; (3) That it belongs to the master or principal, or someone other than the accused; (4) That it was in the possession of the accused at the time of the conversion; (5) That a relation of trust or confidence existed, and that the property came into the possession of the accused, and was held by him, for or on account of his employer; (6) That his dealing with the property constituted a conversion or appropriation of the same; (7) That there was a fraudulent intent to deprive the owner of his property.  10 Am. & Eng. Ency. Law, 983.

Only the two last elements above recited need be considered here; inasmuch, as the other elements have been proven by positive testimony and are not disputed.

As to defendant's dealings with the property entrusted to him, the following facts were shown: That he alone had charge of

the hogs and attended them every day; that he made frequent reports to his employer of their condition; that he gave his employer to understand and believe that the hogs in question were all right and upon the farm all the time that he had charge of them; that he took away several loads of hogs from the farm during this time and sold some of the hogs to a butcher; that when suddenly informed by his employer that fifty-five hogs were missing, he said that he could not account for their disappearance; and that he gave no explanation of his conduct in taking hogs away from the farm, selling them, etc.

The defendant was charged by his employer with the loss of the hogs on February. 15, 1912; the record shows that he was arrested on the charge of embezzlement on March 6th; and that he was tried on May 15 and 16th. He had plenty of time and opportunity to furnish evidence in explanation of his acts with respect to the hogs; to excuse his failure to produce the hogs when demanded; and to justify his conduct in removing large quantities of hogs from the farm during the time he was in charge thereof. He made no defense. Graves v. U. S., 150 U. S. 118; State v. Hasledahl, 3 N. D. 36; Riley v. State, 32 Tex. 763; People v. Royce, 106 Cal. 173.

When the prosecution has proved the crime charged, the defendant must establish the facts on which he relies to excuse or justify his acts, when such excuse or justification does not arise out of the evidence against him. Ake v. State, 6 Tex. App. 398, 32 Am. Rep. 586.

In embezzlement, as in most other cases, the fraudulent intent is to be inferred from the circumstances. It may be inferred when there is concealment or efforts to cover up the conversion. 10 Am. & Eng. Ency. Law, 997.

It is the duty of the court to define the offense and let the jury ascertain the fact of intent, and measure the defendant's guilt accordingly. State v. Harmon, 106 Mo. 635.

An instruction following the language of the statute is sufficient on the question of intent. State v. Adams, 108 Mo. 208; People v. Cobler, 108 Cal. 538.

A demand of the hogs was clearly made, and the defendant was unable to account for the hogs. The weight of the authorities, however, is to the effect that a demand need not be made

for the money or other property alleged to have been embezzled, in the absence of a statute to the contrary, except under the peculiar circumstances of the particular case. 15 Cyc. 495; United States v. Adams, 2 Dak. 305.

As to the effect of an admission by the defendant that he had disposed of any of these hogs, or the absence of such admission, reference is made to the note in 17 Am. & Eng. Ann. Cas. p. 630.

The defendant excepted to the charge of the court for the reason that there was a failure to charge upon circumstantial evidence; but the defendant made no request for any specific charge upon this subject. The alleged failure of the court to charge particularly as to circumstantial evidence is assigned as error.

Circumstantial evidence is sufficient to warrant a conviction for a crime when it establishes the defendant's guilt beyond a reasonable doubt. 23 Am. & Eng. Ency. Law, 951.

The instructions of the court in the present case were full and explicit upon the subject of reasonable doubt. If counsel desire to bring any view of the law of the case before the jury they must make such view the subject of a request to charge, and failing in this they cannot assign error. 11 Ency. Pl. & Pr. 217-223; People v. Marks, 72 Cal. 46; Hodge v. State, 85 Ind. 561.

CORSON, J. Upon an information duly filed by the state's attorney of Minnehaha county, the defendant was tried and convicted of the crime of embezzlement. The information charges, in substance, that the defendant between the 1st of December, 1911, and the 15th of February, 1912, being a clerk, servant, and employe of E. D. Clark, and being a person over the age of 18 years, and not being an apprentice of said E. D. Clark, did by virtue of his employment as such clerk and servant as aforesaid receive and take into his possession, care, and control from said E. D. Clark "55 head of red Duroc Jersey hogs" of the value of $1,100, all of said property being the personal property of said E. D. Clark; that all said personal property was received by said Millard into his possession, control, and care by virtue of his employment as such clerk, servant, and employe of said Clark; that said Millard did willfully, unlawfully, feloniously, and fraudulently convert to his own use and embezzle all the personal property aforesaid, and by the means aforesaid the said Millard did

commit the crime of embezzlement. From the judgment of conviction and order denying a new trial the defendant has appealed to this court.

It is disclosed by the evidence that Mr. Clark, the owner of the hogs, was a resident of Sioux Falls, and owned a farm of 200 acres about three miles from the city on which he had in December, 1911, 142 hogs; that the defendant was in the employ of Clark in the management of the farm, and had control of four or five other employes who worked on the farm; that about the 15th of February, 1912, Clark made an examination of the hogs, and found that there were 55 missing; that he had several conversations with the defendant as to what had become of them. At first the defendant insisted that they must be on the place, but, on the hogs being counted and the 55 being found missing, he denied that he had any knowledge of what had become of them. There was evidence tending to prove that the defendant had been seen on the road to Sioux alls with teams hauling hogs, and there was evidence tending to prove that the defendant had sold hogs to a butcher in Sioux Falls, and that the value of the 55 hogs was between $1,100 and $1,200, and, so far as the record discloses, the defendant introduced no evidence accounting for the disappearance of these hogs or as to what had become of them.

The defendant assigns as error that the court erred in overruling certain objections to the introduction of testimony, in denying defendant's motion for directing a verdict in his favor, in giving certain portions of its charge to the jury, and in omitting to give certain instructions to the jury.

[1] Mr. Clark, a witness for the state, was asked the following question by the state's attorney: "State what quantity of hogs you had upon the premises, described here, on or about the 1st day of December, 1911." To this the defendant objected as incompetent, irrelevant, and immaterial under the allegations in this information, and especially for the reason that the allegation charges specifically that these hogs were turned over by Mr. Clark to the defendant. The objection was overruled, and the witness answered that he had 142 hogs. It is contended by the defendant that since the information stated that the hogs in question were received by the defendant into his care and possession between the 1st of December and the 15th of February, and did

not allege that the complaining witness had any specific number of hogs on his premises within the dates named, that the state was permitted to change the issue in the case, and a positive variance was created in the issues by the ruling of the court above noted. We are of the opinion that the objection to the question was properly overruled, and that there was no variance. The question was a preliminary one, and it was clearly proper to show by the witness the number of hogs in the possession of the defendant belonging to the witness, as this was followed by his evidence tending to prove that on the 15th of February following, upon counting the hogs, he found that 55 were missing, and the evidence was clearly competent, therefore, for the purpose of showing the number of hogs under the charge and control of the defendant in order to lay the foundation for proof of the number that were missing.

[2] It is further contended by the defendant that there was a fatal variance between the description of the property in the information and the proof. It will be observed that in the information the property is described as "55 head of red Duroc Jersey hogs." Clark, the owner of the hogs, in answer to the question, "What kind of hogs were they?" answered, "Duroc Jersey." Other witnesses spoke of them as "red hogs." We are of the opinion that this description of the hogs was substantially correct, although the witness Clark admitted that they were not pure bred Duroc Jersey. There is no allegation in the information that they were pure bred Duroc Jerseys, and hence there was no substantial variance between the description in the information and the description given by the witness. The object of the description of the hogs in the information was to notify the defendant generally of the description of the hogs which he was charged with embezzling, and clearly the hogs were sufficiently identified by the description given by the witnesses, and the defendant could not have been misled by the mere fact that they were not proven to be pure bred Duroc Jersey hogs.

The case of Loyd v. State, 22 Tex. App. 646, 3 S. W. 670, relied on by the defendant, was a case where a party was charged with removing from the state mortgaged property with the intention to defraud the mortgagee, and the property was described in the indictment as "one chestnut sorrel pony * * * and one

Studebaker two-horse buggy." The court says as to the horse and buggy: "The evidence is that the one removed from the state by the defendant was a sorrel, not a chestnut sorrel, as described in the indictment and mortgage, and it was further proved that there is a marked difference between the colors of sorrel and chestnut sorrel. As to the wagon, it was not proved that it was a Studebaker, nor even that it was a two-horse wagon. These defects in the evidence were called to the attention of the court by a special instruction requested by defendant, which was refused." It will be observed that in that case there was a material variance between the description of the horse in the indictment and the description of the horse given by the witnesses, and that as to the wagon there was no evidence as to the make of the wagon, or that it was, in fact, any such wagon as that described in the indictment. It will be noticed that there is a marked difference between the facts in that case and the case at bar. Assuming that a particular description of the property is necessary in an indictment or information for embezzlement, we are of the opinion that the description of the property given by the witnesses in the case at bar sufficiently identified it as the property described in the information, and that there was no material variance between the description of the property in the information and the property as described by the witnesses.

[3] By assignment No. 3 it is claimed that the jury was impressed during the trial and while they were considering their verdict, with the theory that it was a civil action for the recovery of damages for the loss of the hogs alleged to have been embezzled from the fact that the court submitted to the jury and required them to find the value of the property. But we are of the opinion that there is no merit in this contention. The court in its charge to the jury instructed them: "In this proceeding the state accused the defendant, J. R. Millard, with the crime of embezzlement." And the court proceeded to instruct the jury fully as to what constituted the crime of embezzlement, and the jury having returned into court, the foreman remarked to the court: "We came before you to ask a question in regard (to) returning a verdict without inserting the amount of damages." To which the court replied: "We would have to ascertain the damage in some way or other. The crime of embezzlement is very much like

larceny, and in cases of larceny, where the value is not to exceed $20, it is petit larceny, and, if it exceeds $20, it is grand larceny. The punishment in cases of embezzlement is precisely the same as in larceny. So we need to know the amount, or, at any rate, whether it is over $20 or not. That is all we really need to know. The exact amount is not necessary to determine." We must presume that the jury were men of ordinary intelligence, and that they could not have inferred that they were trying a civil case from the language of the court, especially from his answer to their question.

The fifth assignment of error is, in substance, that there was a failure on the part of the state to prove the defendant was over the age of 18 years, that the evidence was insufficient to sustain the verdict, and that the court erred in its failure to instruct the jury upon the subject of circumstantial evidence. This assignment of error, in effect, contains three propositions: (1) That there was a failure on the part of the state to prove that the defendant was over the age of 18 years; (2) that the evidence was insufficient to sustain the verdict; and (3) that the court erred in its failure to instruct the jury upon the subject of circumstantial evidence. We will take up these propositions in their order.

[4] It is true that there is no direct evidence, so far as the record discloses, that the defendant was not within the age of 18 years, but there was indirect evidence to the effect that the defendant had been in the employ of the prosecuting witness as manager of his farm for six years prior to the filing of the information, and that he was a man of family residing upon the farm. We are of the opinion that from the evidence, in the absence of any evidence on the part of the defendant upon the subject of his age, the jury were clearly warranted in finding that the defendant was over the age of 18 years. In the analagous case of State v. Ingraham, 136 N. W. 258, the learned Supreme Court of Minnesota held: "It is suggested that there was no evidence that the prosecutrix was not the wife of the defendant. If it was incumbent upon the prosecutrix to prove a negative, the indirect evidence was ample to establish that the prosecutrix was not the wife of the defendant."

The contention of the defendant that the evidence was insufficient to sustain the verdict is, in our opinion, untenable.

[5] In 10 A. & E. Enc. of Law, 983, the required proof to sustain a conviction in a case of embezzlement is thus stated: "As a general rule, to make out a case of embezzlement under the statutes, it is necessary to show, first, that the accused falls within one of the classes of persons named, or occupies one of the fiducary relations specified in the statute; second, that the thing converted or appropriated is of such a character as to be within the protection of the statute; third, that it belongs to the master or principal, or some one other than the accused; fourth, in most jurisdictions that it was in the possession of the accused at the time of the conversion, so that no trespass was committed in taking it; fifth, that a relation of trust or confidence existed, and that the property came into the possession of the accused, and was held by him, in some jurisdictions by virtue of his employment or office, and in others, for or in the name or on account of his master or employer; sixth, that his dealing with the property constituted a conversion or appropriation of the same; seventh, that there was a fraudulent intent to deprive the owner of his property." In the case at bar it would seem that all these requirements were complied with. It was shown that the defendant came within one of the classes of persons named, or occupied one of the fiduciary relations specified in the statute; that the property converted was of such a character as to be within the protection of the law; that it belonged to his employer, the prosecuting witness; that it was in the possession of the defendant as the manager of the property for his said employer, and that the property was held by him for and on account of his said employer; and that his disposition of the property was without the knowledge or consent of the owner, and was, therefore, an appropriation of the same. The evidence, therefore, clearly warranted the jury in their finding that the defendant had disposed of the hogs with the fraudulent intent to embezzle them and to convert them to his own use, and the verdict of the jury is clearly sustained by the evidence.

[6] It is further contended by the defendant that the court erred in its charge to the jury in failing to instruct them upon the question of circumstantial evidence, but this contention is clearly untenable for the reason that the failure of the court to instruct the jury as to the nature of such evidence did not consti-

tute reversible error as the court was not specially requested by the accused to give an instruction upon that subject. Frye v. Ferguson, 6 S. D. 392, 61 N. W. 161; Garrigan v. Kennedy, 19 S. D. 11, 101 N. W. 1081, 117 Am. St. Rep. 927, 8 Ann. Cas. 1125; Belknap v. Belknap, 20 S. D. 482; 107 N. W. 692; Winn v. Sanborn, 10 S. D. 642, 75 N. W. 201.

. [7]   It is further contended by the defendant that there is no evidence of any demand made upon him for the property, and that, in the absence of such a demand, he could not properly be convicted of embezzlement, but this contention is clearly untenable as the section of the Code (section 626) under which this information was drawn requires no such demand and refusal and no such demand or refusal is alleged in the information. It seems to be generally held that in cases of embezzlement no demand is necessary. In 15 Cyc. 495, the law upon the subject of demand is thus stated: "In order to constitute embezzlement, the accused must be shown to have fraudulently converted money or other property to his own, or some one's else, use, or to have fraudulently secreted it, with intent so to convert it. However, the weight of authority is to the effect that a demand for the money or other property alleged to have been embezzled need not be made by the prosecution, in the absence of statute to the contrary, except under the peculiar circumstances of the particular case." In the case of People v. Ward, 134 Cal. 301, 66 Pac. 372, the learned Supreme Court of that state, discussing the necessity of a demand in cases of embezzlement, says: "A demand is not 'an indispensible requirement of law in all cases,' as contended by the appellant, nor can it be true that 'without such demand, no offense exists.' A demand, followed by a refusal, if the other essential facts exist is evidence of embezzlement, and sometimes indispensible evidence of it, but is the fraudulent and felonious conversion of the money or other property that constitutes the offense, and that may often be proved without a demand. People v. Bidleman, 104 Cal. 608 (38 Pac. 502); People v. Royce, 106 Cal. 173 (37 Pac. 630, 39 Pac. 524); Wharton's Criminal Law, 1030." In Commonwealth v. Hussey, 111 Mass. 433, the Supreme Court of Massachusetts in discussing the question of demand says: "A fraudulent conversion to the defendant's own use would be embezzlement, whether demand were made or not, and, of course, such

demand need neither be averred nor proved." Commonwealth v. Mead, 160 Mass. 319, 35 N. E. 1125; State v. Reynolds, 65 N. J. Law, 424, 47 Atl. 644; Commonwealth v. Tuckerman, 10 Gray (Mass.) 173.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.