STATE OF IOWA, Appellee, v. JACOB B. GRIPP, Appellant.

No. 37819.

1144

JUNE 24, 1929.

REHEARING DENIED SEPTEMBER 30, 1929.

*Higbee & McEniry* and *Parrish, Samson & Huston,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

KINDIG, J.—A grand jury of Union County indicted the defendant-appellant for embezzlement, October 28, 1925. It is charged by the State that the appellant came into possession of  the money thus wrongfully appropriated, through an agency. In that relationship, the appellant was the agent, and Mary L. Longstreth was the principal. On February 24, 1926, the appellant was convicted, as charged, and on February 26th thereafter, he was sentenced. Appellant presents three propositions as the basis for a new trial. They are, generally speaking, insufficiency of the evidence, an erroneous instruction, and the misconduct of a juror.

I. Was a jury question presented? An answer for that interrogatory must be found in a review of the facts. The prose-

cuting witness was the mother of two children, who, at the time in question, were state university students at Iowa City. Said prosecuting witness, in April, 1924, deemed it necessary to pro-. cure a loan upon her farm, for the purpose of supporting her children at Iowa City. She therefore employed appellant (who had a loan office at Afton, but had formerly also maintained offices at Omaha, Nebraska, and Osage, Wyoming, where he handled oil leases), to secure such loan in the amount of six or seven thousand dollars, according to the needs. With the intention of consulting her children concerning the money needed, the prosecuting witness went to the depot at Afton, in order to board a train for Iowa City, when she was met by the appellant. Concerning what was said and done there, the prosecuting witness said:

"Gripp [the appellant] told me there [at the depot] that I could have the loan for either six or seven thousand dollars at 5½ per cent; that I didn't need to wait until I came back to sign up. I was to pay him 2 per cent commission."

Thereupon, the prosecuting witness signed a written application for a loan, as suggested by the appellant. This application was partly in blank. According to the prosecuting witness, it contained no typewritten matter relating to a trust fund when she affixed her name thereto; while, on the other hand, the appellant insists that the instrument embraced the trustee clause at the time. Such controverted provision reads as follows:

"Papers drawn $7,000, which may stand, and if the other $1,000 is desired it may be had. This is to be trusteed and the borrower to pay no interest on it [the $1,000] until she wants it."

Around this dispute the storm of the contest centers. Finally it was decided that the loan should be for $7,000, and it was procured through the Travelers Insurance Company. Gripp, the appellant, received the proceeds from the Travelers Insurance Company by two drafts,—one for $4,500, dated May 21, 1924, and the other in the sum of $2,449.25, dated July 10th of the same year. These drafts were both cashed by the appellant on or about that time. When the two drafts are added together, it is found that the aggregate is $6,949.25. But the difference between that sum and the $7,000 loan is accounted for because Mr.

Adams, who was the agent for the Travelers Insurance Company, made a deduction for his own commission. All the remainder came into the possession of appellant, through the agency agreement with the prosecuting witness. Apparently the real estate was incumbered by two mortgages, together approximating $4,500, at the time the loan in controversy was closed. That sum was paid by appellant, at the request of the prosecuting witness. Moreover, appellant paid for her approximately $100 taxes and some insurance premiums.

However, all the remaining moneys due under that loan transaction were retained by appellant. From time to time, the prosecuting witness made known to him her financial needs. So, upon each occasion, the appellant would pretend to advance her certain sums, with the alleged explanation that the loan had not yet been closed. Nevertheless, as a matter of fact, as shown above, appellant did have the money in his possession, and the transaction had been consummated with the loan company. Frequently, small sums were thus purported to have been advanced by the defendant to the prosecuting witness. Being ignorant of the true situation, the prosecuting witness believed the appellant until January or February, 1925, when she consulted a banker at Iowa City, and then proceeded home, where she conferred with her attorney, Mr. L. J. Camp. He attempted to collect the balance due at that time, which the appellant conceded to be $1,217.88. Through the efforts of Mr. Camp, an additional $300 was collected from the appellant. About that occasion Mr. Camp testified:

"He [appellant] said he had been out all day, trying to raise some money. Said he would get the rest of the money and pay it as fast as he could get it. He said, if I would let him stay out of jail, he would pay all of it."

A significant circumstance at this juncture is the fact that, during all the attempts made by Mr. Camp to obtain from the appellant the money due the prosecuting witness, it was never claimed that there was any trust agreement with her. First the prosecuting witness herself, and later her attorney, made repeated demands upon the appellant for this money; and during all that period it was not suggested by the latter that he was prevented from paying, or protected in his retention of the money

required, because of any trust agreement. Subsequently, when the defendant did not pay, the prosecuting witness, on April 29, 1925, swore out a preliminary information against him, under which he was arrested. Thereafter, on the date previously mentioned, the indictment was returned.

To offset the testimony of the State, the appellant testified, and produced other witnesses. Hence, there was conflicting evidence. Underlying the defense, however, is the aforesaid trustee clause. Giving that provision its full significance, it will be seen that there is nothing therein to indicate that the prosecuting witness was not to have her money whenever she demanded it. Miss Mateer, a stenographer for appellant, testified:

"She [the prosecuting witness] said, 'I don't need all the money, Mr. Gripp [appellant]; that is more than I need, and I will need it a year from now, when the children graduate.' And Mr. Gripp says, 'Mrs. Longstreth [the prosecuting witness], I can use the money, and pay you interest on it yearly, so there will be no extra interest for you to pay.' That was the oral agreement."

Obviously, then, even appellant is not relying upon the so-called trustee clause, in and of itself, for protection, but is attempting in his defense to add thereto by oral testimony, and show a verbal agreement between himself and the prosecuting witness, whereunder he was to have the loan of that money for one year. Every claim and contention of appellant's is contradicted by the prosecuting witness, the acts and conduct of the appellant himself, and the circumstances surrounding the transaction. Manifestly, the alleged trustee clause and oral agreement were not mentioned to the prosecuting witness during the long period of time she was making demands for her money. Rather than that, appellant deceived the prosecuting witness by causing her to believe that the loan had not yet been closed. Later, when the prosecuting witness employed her attorney, and he made demands upon appellant, none of these suggestions were made, but rather, the debt was conceded, and admission was made that the money was not in hand, but had to be raised.

Resultantly, the conflicting claims were properly submitted to the jury under the court's instruction, and there is ample evidence to support their verdict against appellant in that regard.

1148

II. Objection is also made because the court gave the jury Instruction No. 17, which reads in part:

"* * * Then [following the embezzlement] it would be no defense that, after [preliminary] information [in an inferior court before indictment] charging him with embezzlement was filed against him, that he offered to pay said amount of money to the said Mary L. Longstreth, or tendered the same to her. But if you find that such offer or tender, if any, was made before any information was filed against the defendant, then such offer or tender would be a good defense, and you should find him not guilty."

For elucidation, it is to be noted that the balance due the prosecuting witness, as shown by the indictment, was $866.07. As previously stated, a preliminary information was filed against  the appellant, and later he was indicted by the grand jury. After appellant's arrest under the information, but before the return of the indictment, he met the prosecuting witness upon the streets of Creston, and there tendered her the sum due. She feared to accept the money, under the circumstances, and requested that the appellant confer with her attorney, Mr. Camp.

Upon that fact appellant builds his argument concerning the contended erroneousness of the said instruction. Appellant's theory seems to be that, if he tendered the money any time before the indictment, there could be no prosecution; and accordingly he urges that the instruction prejudiced him to the extent that it limited such right of repayment to the preliminary information. Here the appellant is in error. Section 13031 of the 1924 Code provides:

"If any officer, agent, clerk, or servant of any corporation or voluntary association, or if any clerk, agent, or servant of any private person or copartnership, except persons under the age of sixteen years, or if any attorney at law, collector, or other person who in any manner receives or collects money or other property for the use of and belonging to another, embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle or convert to his own use, without the consent of his employer, master, or the owner of the money or property collect-

ed or received, any money or property of another, or which is partly the property of another and partly the property of such officer, agent, clerk, servant, attorney at law, collector, or other person, which has come to his possession or under his care in any manner whatsoever, he is guilty of larceny.''

There must be a point during the process contemplated in that legislative enactment when the crime of larceny by embezzlement is completed. If that place is reached, it cannot be said, as a matter of law, that the appellant can himself condone the offense or bring about an automatic pardon by tardily making a tender of the money thus wrongfully appropriated. Were it otherwise, the statute would become meaningless, and agents would be induced by the law's laxness to speculate and otherwise use the principal's money, with the assurance that there could be no successful prosecution at any stage of the procedure, because tender would bar the same, even though the crime had been perpetrated and fully consummated. Under the indictment, the gist of said embezzlement, within the statute above quoted, is the fraudulent conversion. *State v. Brooks,* 85 Iowa 366; *State v. Hoffman,* 134 Iowa 587; *State v. Schumacher,* 162 Iowa 231. See, also, *State v. Blackley,* 138 N. C. 620 (50 S. E. 310); *Commonwealth v. Kelley,* 125 Ky. 245 (101 S. W. 315); *State v. Leonard,* 56 Wash. 83 (105 Pac. 163); *State v. Ross,* 55 Ore. 450 (104 Pac. 596); *People v. Hatch,* 163 Cal. 368 (125 Pac. 907); *Prinslow v. State,* 140 Wis. 131 (121 N. W. 637); *Commonwealth v. Mead,* 160 Mass. 319 (35 N. E. 1125); *State v. Nugent,* 182 Ind. 200 (106 N. E. 361); *State v. Baxter,* 89 Ohio St. 269 (104 N. E. 331).

Plainly the court was too generous; for, even though there had been no preliminary information, there could have been a prosecution at any time after the offense had been committed. *State v. Wilson,* 189 Iowa 1057, is not authority for the proposition that tender can be made a bar any time before indictment. Rather, the suggestion therein contained is that such instruction was too liberal with the defendant. Immediately succeeding the alleged tender, the prosecuting witness requested her attorney to go to appellant's counsel's office, for the purpose of accepting the purported offer. This he did, but failed to receive the money. Moreover, the prosecuting witness in the case at bar, as well as

1150

her attorney, repeatedly demanded the repayment of this money from appellant. If it be assumed that the oral contract contended for by appellant was never entered into, then the prosecuting witness was entitled to her money as soon as the loan with the Travelers Insurance Company was completed. At least, the proceeds thereof should have been forthcoming upon demand. Therefore, under the facts and circumstances here presented, the crime of larceny by embezzlement was completed, under the statutory provisions aforesaid, even before the information; and while the appellant was bound at law to compensate the prosecuting witness for the financial loss, yet in so doing he could not wipe out the criminal liability for the embezzlement.

III. Further complaint is made by the appellant regarding the conduct of a jurywoman, Clara Scullen. Boyd Shaw, another juror, by affidavit stated that the said Clara Scullen, while  the jury were deliberating on their verdict, stated that "she had been recorder of Union County for two terms, and knew from experience that the * * * [loan] contract was not binding on the prosecuting witness." Reasons asserted by her therefor were that the instrument was executed by the prosecuting witness alone. Neither the State nor the appellant claims the invalidity of that agreement. Both parties to the litigation admitted its binding effect. Dispute arose only concerning the extent of its terms: that is, as to whether the trust agreement was a part thereof.

Necessarily, then, if the jurywoman made the statement charged, it was concerning a wholly immaterial matter. Again, said statements were not of evidentiary matters, but rather, in the way of a conclusion, expressed, not by a lawyer, but by a layman, known by all the jurors to be such. Furthermore, Clara Scullen, the jurywoman, denies that she or anyone else made such assertions, and in this she is corroborated by ten other jurors. Consequently the trial court was warranted in finding that there was no misconduct in the jury room.

Wherefore the judgment of the district court should be, and hereby is, affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, WAGNER, and GRIMM, JJ., concur.