(148 App. Div. 205.)

### PEOPLE v. COHEN.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. LARCENY (§ 40*)—STATUTORY AND COMMON-LAW LARCENY—FALSE PRETENSES.

Defendant represented to complainant that he had 200 shares of Amalgamated Copper, which company had an office at 42 Broadway, New York City, and that he desired to sell complainant 50 of these shares. Defendant frequently called on complainant to induce him to purchase, and showed him newspapers containing market reports showing the rise of Amalgamated Copper stock and solicited him to buy. Finally complainant agreed and indorsed a check to defendant for the price, whereupon defendant gave a receipt for $2,600 "for fifty shares of Amalgamated Copper at $52.00." Defendant cashed the check, and some time thereafter handed to complainant an envelope, saying: "Here is your stock certificate. Put your name on it." Complainant signed without opening the paper, and defendant promptly sealed it up in the same envelope, telling him to put it in the safe and not tell any one about it. For some time thereafter he kept showing complainant the market quotations, and later paid him $25 as a dividend on his stock. When complainant finally opened the envelope, more than five months after it was purchased, he found that it contained what purported to be a certificate that defendant and B. owned 200 shares in an amalgamated copper company organized under the laws of New York, whereof 100 purported to be transferred to complainant. There was no such corporation, and the certificate bore on its face evidence of its spurious character as a certificate of stock in any company, and defendant never made any effort to deliver genuine shares of copper stock to complainant. *Held*, that such facts established the obtaining of money by false pretenses, and, while sufficient to sustain a conviction of the statutory crime of grand larceny, did not sustain a count in the indictment for common-law larceny.

[Ed. Note.—For other cases, see Larceny, Dec. Dig. § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES—FALSE PRETENSES—FRAUD.

In a prosecution for larceny arising out of false representations in a purported sale by defendant to complainant of a portion of the shares of what defendant represented was a well-known corporation, of which shares defendant pretended to be the owner, other transactions, by which defendant misappropriated money given to him by others to purchase stocks in the open market, were different in character and inadmissible on the question of defendant's intent in carrying out the transaction in question.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

**3.** CRIMINAL LAW (§ 1169*)—TRIAL—CURING ERROR.

Where, in a prosecution for grand larceny by false pretenses, a large part of the record was taken up with testimony relating to other nonsimilar transactions in which defendant was claimed to have misappropriated money given to him by others to purchase stocks in the open market, and the jury could not have failed to be prejudiced by such evidence against defendant, its erroneous admission was not cured by the court sustaining a motion to strike it out at the close of the whole case and directing the jury to disregard it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3137–3143; Dec. Dig. § 1169.*]

**4.** CRIMINAL LAW (§§ 406, 670*)—EVIDENCE—LETTERS—ADMISSIONS.

Where, in a prosecution for larceny by obtaining money under false pretenses, defendant wrote letters to complainant containing admissions of his obligations and appeals for forbearance, such letters were admissible as bearing on defendant's admissions of guilt and were not subject to exclusion because they also contained nonseparable matter with reference to another distinct prejudicial transaction.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. §§ 406, 670.*]

Appeal from Court of General Sessions, New York County.

Eli Cohen was convicted of grand larceny in the first degree, and he appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGHLIN, SCOTT, and DOWLING, JJ.

Clark L. Jordan, for appellant.
Robert S. Johnstone, for the People.

DOWLING, J. [1] Defendant has been convicted of the crime of grand larceny committed under the following circumstances: He had inquired of his butcher, John G. Kloes, in May, 1908, whether he intended to purchase any copper stock, to which the latter replied that he had no money for that purpose, but if his wife's uncle, one Siegrist, would advance half the required cash, he would go in with him. Cohen then told Kloes that the stock was Amalgamated Copper, which company had its office at 42 Broadway, New York City, and that he wanted to sell Kloes 50 out of 200 shares which he owned. Thereafter he frequently called at Kloes' store, exhibiting the newspapers showing the rise in Amalgamated Copper stock, and solicited Kloes to buy the shares which were his property. Finally, on July 2, 1908, Siegrist made out a check for $2,600 to the order of Kloes, which the latter indorsed and turned over to Cohen in payment for 50

shares of Amalgamated Copper stock at ·$52 per share, the agreed price. Thereupon Cohen gave him, in writing, a receipt as follows:

"Received from John G. Kloes twenty-six hundred dollars for 50 shares of Amalgamated Copper at $52."

It was admitted that the defendant deposited the check to his account and received the proceeds thereof. When the check was turned over, defendant said he would have his broker attend to the transfer of the stock, and, when Kloes asked for his certificate on the afternoon of the same day, defendant said he would bring it in the following day, July 3d. On that day defendant produced an envelope, saying: "Here is your stock certificate. Put your name on it." Kloes signed it without opening the paper, and defendant promptly sealed it up in the same envelope, telling Kloes to put it in the safe and not tell any one about it. For some time he still kept showing Kloes the market quotations for Amalgamated Copper stock, and in September gave him $25 as a dividend on Kloes' stock. When Kloes finally opened the envelope in Christmas week, 1908, he found that it contained what purported to be a certificate that Eli Cohen and Edward Bach owned 200 shares in an amalgamated copper company organized under the laws of the state of New York, whereof 100 purported to be transferred to John G. Kloes. This was the paper upon the back of which Kloes had signed his name, without knowing its contents. It was conceded that there was no such company organized or in existence under the laws of the state of New York as the "Amalgamated Copper Company." The certificate bore upon its face the evidence of its spurious character as a certificate of stock in any company. Inclosed in the same envelope was a certificate for shares in the Juniper Gold Mining Company, valueless, and of whose existence Kloes knew nothing until he opened the envelope. Defendant never made any effort to deliver genuine shares of copper stock to complainant.

It is plain upon this record that facts · had been established sufficient to justify defendant's conviction of the statuory crime of grand larceny. For Kloes had parted with the title to his money relying on the false representation made by defendant of an existing fact, viz., that he was the owner of 200 shares of stock of the Amalgamated Copper Company which had its office at 42 Broadway, and whose stock was that shown in the market quotations brought to Kloes' attention by Cohen. Out of this stock Cohen understood that his broker would arrange the transfer of 50 of such shares to Kloes. When it was shown that the 200 shares of stock which Cohen in fact claimed to own and which he tendered in performance of the purchase were represented by a bogus certificate for stock in a nonexistent amalgamated copper company, the prosecution had gone as far as it was required to raise the issue as to the falsity of the representation; for it has been recognized, in view of the general impossibility of proving an absolute negative, that it is sufficient for the prosecution to approximate, so far as it is in its power, to such negative, leaving it to the defendant, if he can, to break this down by proving the affirmative fact. People v. Coombs, 36 App. Div. 284,

55 N. Y. Supp. 276, affirmed 158 N. Y. 532, 53 N. E. 527; People v. Pinckney, 67 Hun, 428, 22 N. Y. Supp. 118.

The facts proved did not justify the submission to the jury of defendant's guilt of common-law larceny, which constituted the second count in the indictment; for that count cannot be supported by proof establishing only the crime of larceny by false pretenses. People v. Dumar, 106 N. Y. 502, 13 N. E. 325. It is apparent here that Kloes absolutely parted with the title to his money, as well as its possession, relying on the representations made by Cohen, and therefore the crime is false pretenses, and not common-law larceny. Loomis v. People, 67 N. Y. 322, 23 Am. Rep. 123. The denial of the motion to take from the consideration of the jury the second count in the indictment, therefore, constituted error.

[2] Error was also committed in admitting the testimony of the witnesses Charles Herbstrith, Louisa Herbstrith, Alexander Collinge, and George A. Young. Charles Herbstrith was allowed to testify as to a transaction with defendant in May, 1908, when the latter obtained from him $750 to buy for him enough to make up 100 shares of Pennsylvania Railroad stock at $127 per share. His wife already had bought 40 shares through Cohen, but, getting no dividend, complained to Cohen, who said they could get no dividends unless they owned 100 shares, whereupon Herbstrith produced the amount required to buy the balance. He was allowed to testify as to his reliance on Cohen's representations that the only way to get a dividend on his wife's stock was to buy enough to bring the total holding to 100 shares. Of course, he never received the stock. He was also allowed to testify to a transaction by which defendant borrowed $230 from him to buy pawn tickets, which never was done. Mrs. Herbstrith was allowed to testify as to the transaction with Cohen by which he obtained from her $750 to buy for her 40 shares of Pennsylvania Railroad stock, in December, 1907. The receipt given by defendant in that transaction was received in evidence. Officers Young and Collinge were allowed to testify to statements made to them by Cohen in relation to the Mrs. Herbstrith transaction. All this testimony was received on the ground that the transactions were similar to the one in question, and therefore were admissible as bearing on the question of intent. Not only was the testimony unnecessary to the people's case, but its admission was clearly erroneous. Transactions by which defendant misappropriated money given to him to buy stocks in the open market, differ in character from those where moneys were obtained by false representation that he personally owned stock for which he obtained payment. It is, of course, true that the acts sought to be established as bearing on the question of intent need not be part of a general scheme or plan; but it is necessary that they must be similar in character. People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. That similarity does not here exist.

[3] Nor was the error cured by the action of the court at the close of the whole case in striking out the testimony referred to and instructing the jury to disregard it. It is undoubtedly the rule that, where a technical error has been committed in receiving evidence

which has not really prejudiced the defendant's case, the striking out of the testimony, accompanied by an instruction to the jury to disregard it, entirely cures the defect. People v. Barnes, 202 N. Y. 88, 95 N. E. 15. But here a large part of the record is taken up with the testimony subsequently stricken out, and it was the subject of discussion between the court and counsel, as the questions of its relevancy were argued. The jury could not have failed to be prejudiced by it against defendant, who was placed by it in the position of being guilty of other acts of larceny, even though not of the same character as the one complained of. We do not believe the subsequent striking out of the testimony, even though accompanied by proper instructions to the jury to disregard it, cured the error.

[4] Objection was also made to the receipt in evidence of certain letters written by defendant to Kloes. These all contained, in effect, admissions of his obligations to the latter and appeals for forbearance, which were proper for the consideration of the jury as bearing on his admissions of guilt. That they also contained reference to a "baker's case" may be unfortunate for defendant, but affords no reason for their exclusion, as his admissions are so involved with the existence of the baker's claim that they cannot be separated. The letter dated February 20, 1909, however, being people's Exhibit 5, contains no admission by defendant relevant to this case, and refers to another criminal charge against him. It should not have been received in evidence.

The judgment of conviction appealed from must therefore be reversed, and a new trial ordered.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. I concur on the ground that it was error to allow the jury to convict on the second count of the indictment—what is known as "larceny at common law." I do not agree with Mr. Justice DOWLING that the admission of evidence of these other transactions, which involved fraud, was error, as the defendant's intent was a material element of the crime charged in the first count of the indictment, and this evidence was competent on that question.