[No. 14943.  Department One.  January 9, 1919.]

THE STATE OF WASHINGTON, *Respondent,* v. DIAMOND ICE & STORAGE COMPANY, *Appellant.*[1]

FISH (18)—OFFENSES—FAILING TO REPORT TONNAGE TAX. Evidence that fish frozen and preserved by accused might have been caught in Oregon, British Columbia, Alaska, or the state of Washington, does not sustain a conviction for failure to report and pay a tonnage tax on fish frozen by accused, caught within the waters of the state of Washington.

SAME (19)—OFFENSES—INFORMATION—VARIANCE. Under Rem. Code, § 2057, requiring an information to be direct and certain, an information charging failure to report and pay a tonnage tax upon fish frozen and preserved by accused, caught within the state of Washington, does not sustain a conviction for failure to report and pay a tonnage tax upon fish which were caught in the waters of Alaska, British Columbia, or elsewhere, even though that also be an offense under the statute.

Appeal from a judgment of the superior court for King county, Abel, J., entered April 24, 1918, upon a trial and conviction of failing to report and pay a tax on fish frozen by the accused.  Reversed.

*James B. Howe* and *A. J. Falknor,* for appellant.

*Alfred H. Lundin* and *Frank P. Helsell,* for respondent.

TOLMAN, J.—On September 20, 1917, the prosecuting attorney of King county filed an information in

[1]Reported in 177 Pac. 634.

the superior court for that county, the charging part
of which is as follows:

"Said Diamond Ice & Storage Company, Inc., a
corporation, and Q. G. Peniston, in the county of King,
state of Washington, on and from March 31, 1917, con-
tinuously up to and including July 31, 1917, were en-
gaged in freezing and preserving in ice food fish
caught within the waters of the state of Washington,
and said Diamond Ice & Storage Company, Inc., a cor-
poration, and Q. G. Peniston, and each of them, upon
said 31st day of July, 1917, did wilfully and unlawfully
neglect and refuse to make a report to the fish com-
missioner of the state of Washington for said period
between the 31st day of March, 1917, and the 31st day
of July, 1917, stating the quantity in pounds of all fish
so preserved or frozen by them, as required by law,
and said Diamond Ice & Storage Company, Inc., a
corporation, and Q. G. Peniston, and each of them,
have ever since wilfully and unlawfully failed, neg-
lected and refused to make such report to said fish
commissioner as required by law, and said defendants
during all of said period, and ever since, have wilfully
and unlawfully neglected and refused to remit to said
fish commissioner the sum of one dollar ($1) per gross
ton for each ton, or fraction thereof, of food fish so
preserved and frozen by them between the 31st day
of March, 1917, and the 31st day of July, 1917, as re-
quired by law."

There was a dismissal as to Q. G. Peniston, and the
cause proceeded to trial against the Diamond Ice &
Storage Company before the court, a jury having
been waived, resulting in a judgment of guilty and the
imposition of a fine, from which an appeal was duly
taken.

The testimony on behalf of the state tended to show
that the appellant was conducting a general warehouse
and cold storage business in Seattle, and as a part
thereof had been engaged in freezing fish during the
period of time mentioned in the information, and that

it did not, on July 31, 1917, or subsequently, file any report or pay any tonnage tax on fish frozen by it during such time. In the attempt to show that some of the fish so frozen were caught within the waters of the state, as charged in the information, there was introduced the testimony of a witness engaged in the wholesale fish business, whose company operated a boat in the waters of Puget Sound for the purpose of buying salmon trout, and it appears therefrom that the boat made 24-hour trips from Seattle for the purpose of buying and bringing in the fish. The witness said:

"A. The boat buys the salmon. It goes around amongst all the boats and buys them. Q. You don't know where the fish were caught that you bought? A. No, I don't know where they were caught, but— Q. I object unless you know. Mr. Helsell: Let him answer. He says he knows where they were bought. Q. (Mr. Helsell) Who sells them? A. The Greek fishermen go out and catch them in nets at night and when they take the nets in in the morning the buyer goes around amongst them and picks them up and brings them in. Q. You don't know where any of them were caught? You were not present? A. No, sir."

The witness further testified that, on May 12, 1917, of the fish brought in by this boat, 2,645 pounds of salmon trout were placed with appellant for freezing.

Again, another witness, also a wholesale fish dealer, testified that, on July 28, he placed with appellant for freezing 145 pounds of sole and thirty pounds of perch which were shipped to him from Whidbey Island and Grays Harbor, respectively, but the witness did not pretend to know where, or by whom, any such fish were caught, saying that he bought from fishermen and fish brokers wherever he could get fish.

Mr. Peniston, appellant's manager, was called as a witness for the state, and testified that his company

froze fish for any one who sent them to the plant for that purpose, that the fish go through four or five hands before they come to the plant, and the first any one connected with appellant's business sees or knows of them is when the fish are dumped off a wagon through a chute and into the appellant's basement, saying in answer to a question by the prosecutor:

"A. They asked me to make a report of the fish caught within the state of Washington waters, and on a certain side of the Columbia river and so on. But I couldn't tell. The first time I see the stuff, it is dumped off the wagons through the chute into our basement. The fishermen receive the fish from all different points and they pack it in ice and use out of that to sell; and when they get an accumulation over and above what their sales will be, they load it in a wagon and send it to storage. Some of that might come from Oregon, some of it might come from British Columbia, some of it might come from Alaska. But really I don't believe the wholesale dealer in fish could swear where any particular fish he received comes from."

This testimony, which was all the proof upon this particular point, clearly falls far short of proving with the certainty required under a penal statute that appellant was engaged in freezing and preserving in ice food fish caught within the waters of the state of Washington, as charged in the information.

But it is argued that, if the evidence is insufficient to prove that appellant had in fact frozen fish caught within the waters of the state, yet nevertheless appellant is guilty under the statute, because it is contended that the statute requires the report and the payment of the tonnage tax from all those engaged in curing and freezing fish, without regard to where the fish were caught. Assuming, without deciding, that such is the intention of the statute, is the state

not limited in this case to the charge made in. the information? As we understand the rules of pleading in criminal cases, the state is bound by its allegations in the information, and having charged in effect that appellant failed to report and pay a tonnage tax upon food fish frozen by it caught within the waters of this state, which no doubt charges an offense under the statute, it cannot be permitted in support of that charge to prove that appellant failed to report and pay a tonnage tax upon food fish frozen by it which were caught in the waters of Alaska, British Columbia, or elsewhere, even though that also be an offense under the statute. We think, under our statute, Rem. Code, § 2057, requiring the information to be direct and certain, that the state is bound by the charge as made, and must prove the offense to have been committed as there alleged, in order to sustain a conviction. 1 Wharton, Criminal Evidence, § 92; 13 Ency. Evidence, 640; *State v. Gifford,* 19 Wash. 464, 53 Pac. 709; *State v. Morgan,* 21 Wash. 355, 58 Pac. 215.

Reversed, with directions to dismiss.

MAIN, C. J., and MITCHELL, J., concur.

CHADWICK and MACKINTOSH, JJ., concur in the result.