may be sentenced under section 2190 for both offenses. (People v. Frost, 58 Misc. 18; Op. Attorney-General [1909], 909.)

The last paragraph permits the reconfinement of an escaped convict for the balance of his term before commencing to serve out a sentence on a conviction while he was at large. (Op. Attorney-General [1895], 316.)

By this section a prisoner sentenced for a definite term to begin on the expiration of an indeterminate sentence is not entitled to a parole after the minimum term of imprisonment to enable him to commence serving his second term. (Op. Attorney-General [1910], 383; Op. Attorney-General [1909], 819.)

Where a paroled prisoner commits an offense and is sentenced therefor his new term does not begin until he has served out his first sentence. (Op. Attorney-General [1903], 255.)

---

## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT

### January 16, 1920.

## THE PEOPLE v. ADOLPH EHRLICH.

### (190 App. Div. 302.)

(1) GRAND LARCENY IN FIRST DEGREE—INDICTMENT FOR STEALING DIAMONDS AND FOR FELONIOUSLY APPROPRIATING THEM WHILE BAILEE THEREOF— EVIDENCE.

Upon the prosecution of a defendant indicted on two counts: First, in the common-law form for stealing diamonds, and, second, for having feloniously appropriated them to his own use while bailee thereof, it appeared that the diamonds were delivered to the defendant by the owner to be polished under an express agreement that they were to be returned to the owner, and that the defendant might then exercise a right to purchase under an option given at the time they were delivered to him, and that in the event of his election to purchase, the proceeds of two checks which he delivered to the owner as security would be applied on the purchase price. The People contended that the defendant obtained possession of the diamonds as bailee by trick and device, in that he gave a worthless check and represented that it was good and obtained delivery after banking hours, intending to appropriate the diamonds to his own use. The defendant claimed to have obtained possession as purchaser. *Held,* that since the defendant was convicted only on the first count, the verdict does not show that the jury were convinced that he misappropriated the diamonds as bailee.

(2) SAME—PROOF NECESSARY TO ESTABLISH LARCENY AT COMMON LAW.

To constitute larceny at common law, it was necessary to show that the property was taken by force and arms, or in other words by a trespass, or that *possession* was obtained by device, trickery, artifice, fraud or false pretense for a special purpose, the owner intending to part with possession but not with title, and the person receiving the property intending to appropriate it to his own use and not to the special purpose for which he received it.

(3) SAME.

Since the only theory on which the conviction of the defendant can be sustained is that the jury found that the transaction was intended by the owner as a bailment, but that the defendant obtained possession by trick and device, intending to appropriate the property to his own use, and since it cannot be said on the record that the jury so found, and as the verdict may have been rendered on the erroneous theory that the transaction constituted a sale of the diamonds, but that the sale was induced by trick and device, the conviction must be reversed and a new trial granted.

APPEAL by the defendant, Adolph Ehrlich, from a judgment of the Court of General Sessions in and for the county of New York, rendered against him on the 23d day of October, 1918, convicting him of the crime of grand larceny in the first degree.

*Charles Fredericks* of counsel (*Alfred M. Simon,* attorney), for the appellant.

*Robert D. Petty* of counsel (*Edward Swann, District Attorney*), for the respondent.

LAUGHLIN, J.:

Defendant was indicted on two counts. The first count is in the common-law form for stealing diamonds and the second is for having feloniously appropriated them to his own use while bailee thereof.

The testimony given in behalf of the People tended to show and would have warranted the jury in finding that the diamonds were delivered to the defendant by David Saks & Co., Inc., the owner thereof, on the 19th of May, 1917, to be polished, and

on the express understanding and agreement that when polished by him they were to be returned to the owner and that he might then exercise a right of purchase under an option therefor given at the time they were delivered to him, and that, in the event of his election to purchase them, the proceeds of two checks which he delivered to the owner as security for the return of the diamonds would be applied on the purchase price thereof; that the defendant on the 17th of May, 1917, solicited the business of polishing the diamonds and the diamonds to be polished by him were then selected but delivery was withheld until he gave security, which he did not do until after banking hours on the nineteenth of the same month; that the diamonds were worth $4,596 and that the security given by him on receiving them consisted of a check drawn by his firm, dated that day, for $3,825, when the account on which it was drawn was good for only $8.50, and another check for $275, which was postdated and had been given to the defendant by a customer and was subsequently collected; that when questioned in behalf of the owner of the diamonds with respect to why he gave his firm's check, which was dishonored because the account was not good therefor, defendant stated that he intended to have the account made good, but had been unable so to do and that he had lost the diamonds from his inside coat pocket within a few hours after receiving them and that it was *a civil matter* and that the owner of the diamonds could have recourse only to a civil remedy. Defendant testified he purchased the diamonds of the owner and received them on the seventeenth of May and that the checks were delivered in payment therefor and that of his firm was postdated for the reason that the condition of the account did not warrant the drawing of the check against the same then and that he did in fact lose the diamonds on the nineteenth, two days after receiving them. The defendant conceded that on receiving the diamonds he signed a memorandum on a printed form, reciting that they were to be returned to the owner and that in a blank thereon, with respect to a deposit as

a guaranty, figures with dollar signs preceding them, corresonding with the amounts of said checks, were written in. In behalf of the defendant it appeared, however, that his brother was in the diamond business and had been purchasing diamonds from David Saks & Co., Inc., for a considerable period of time and that with respect to such purchases in each instance, he signed a like memorandum although he never did any work for said company, and that the reason assigned by David Saks & Co., Inc., for requiring said memorandums was that the English government did not allow exportation of diamonds *for sale* but only *for manufacturing purposes* and that the defendant was introduced to David Saks & Co., Inc., by his brother and understood this requirement with respect to giving such a memorandum and the reason therefor and that consequently nothing was said with respect thereto at the time he purchased the diamonds in question and signed the memorandum.

The theory of the People on the trial evidently was that the defendant obtained possession of the diamonds *as bailee* by trick and device, intending to appropriate the same to his own use; and the theory of the defense was that defendant obtained possession *as purchaser*. The trick and device, it is claimed, consisted in giving the worthless check and representing that it was good and in obtaining delivery after banking hours on a Saturday afternoon. The conviction was only on the first count. The verdict, therefore, does not show that the jury were convinced that the defendant misappropriated the diamonds *as bailee*. If the jury believed that the defendant obtained possession of the diamonds by trick and device, the owner not intending to part with title but only with possession to the defendant as bailee to have work done upon them, then, and then only, was a conviction under the first count for larceny as at common law warranted, for the indictment does not charge larceny by false pretenses. No false pretense is alleged in the indictment, and, therefore, upon no theory of the evidence would a conviction be warranted if the jury believed the testi-

mony of the defendant to the effect that he *purchased* the diamonds. (People v. Cohen, 148 App. Div. 205, 27 N. Y. Crim. 1.) That is now conceded by the counsel for the People and it is established by all of the authorities applicable to the facts, for to constitute larceny at common law, it was necessary to show that the property was taken by force and arms or in other words by a trespass or that *possession* was obtained by device, trickery, artifice, fraud or false pretense for a special purpose, the owner intending to part with possession but not with title, and the person receiving the property intending to appropriate it to his own use and not to the special purpose for which he received it. (People v. Laurence, 137 N. Y. 517; People v. Miller, 169 id. 339, 16 N. Y. Crim. 331; Smith v. People, 53 id. 111; People v. Dumar, 106 id. 502; Kelley v. State [Georgia], 100 S. E. Rep. 23; Horton Crim. Law [11th ed.], § 1205; 2 Bishop New Crim. Law [8th ed.], § 864; 9 Halsbury's Laws of England, § 1280.) The only theory on which the People contend that the conviction can be sustained is that the jury found that the transaction was intended by the owner as a bailment but that the defendant obtained possession by trick and device intending to appropriate the property to his own use. This, we think, is a correct view of the case. The difficulty, however, is that it cannot be said on the record that the jury so found. Under the charge of the court to which no exception was taken and which no one asked to have corrected, the jury were clearly permitted to convict the defendant under the first count if they found that the transaction was intended as a sale of the diamonds. The court in charging the jury at the outset, correctly stated the theory on which a conviction could be had on the first count with the exception that attention was not drawn to the point that it was essential that the owner intended merely to part with possession and not with title; and from other subsequent parts of the charge, it would seem that the learned court did not have this point in mind for in instructing the jury with respect to their

duty under the second count, it was made perfectly clear that there could be no conviction under that count unless the owner intended to part with possession to the defendant as bailee, but did not intend to part with title. The court pointedly instructed the jury that the crucial point in the case was whether the transaction was a sale and the checks were given in payment or a bailment and the checks delivered as security. The court charged that if the transaction was a sale, the defendant was not liable under the second count, which charged him with larceny as a bailee, and thereupon further charged as follows: " If the transaction was a sale, then the defendant's guilt, if he was guilty, is dependent upon your belief upon the evidence that the transaction was brought about by a trick or device resorted to by th edefendant." The trial court was of opinion that the verdict indicated that the jury found that the transaction constituted a sale of the diamonds but that the sale was induced by trick and device. Considering the manner in which the court submitted the case to the jury, we think it quite probable that the verdict was rendered on that theory which concededly is erroneous.

The conviction, therefore, should be reversed and a new trial ordered.

CLARKE, P. J., SMITH, MERRILL and PHILBIN, JJ., concur.

Judgment reversed and a new trial ordered. Settle order on notice.