[No. 27781.   Department One.   December 28, 1939.]

THE STATE OF WASHINGTON, *Respondent,* v.
BIAN SMITH, *Appellant.*[1]

[1]Reported in 98 P. (2d) 647.

*Roy C. Fox,* for appellant.

*Howard Phillips* and *C. C. Quackenbush,* for respondent.

SIMPSON, J.—The defendant and H. W. Ruark were jointly charged in an information filed by the prosecuting attorney of Lincoln county with the crime of larceny, in that they did take, steal, and carry away two thousand dollars, the property of the Davenport Union Warehouse Company.

H. W. Ruark pleaded guilty, and the trial of defendant Bian Smith resulted in a verdict of guilty. A motion for directed verdict of acquittal was made at the time the state rested, and again at the conclusion of the trial. The motions were denied. Motions for a new trial and in arrest of judgment were presented by defendant and denied by the court. From a judgment and sentence to the penitentiary, defendant Smith has appealed.

Error is predicated upon the court's denial of the motions for dismissal, which motions were based upon the ground that the evidence introduced by the state did not support the charge as contained in the information, and that there was a fatal variance between the allegations contained in the information and the evidence offered in support thereof.

The facts are not in serious dispute and may be summarized as follows: Appellant was manager of the Davenport Union Warehouse Company from 1923 until the 14th day of July, 1938. As manager, he had

complete control of all the business of the company, including the bank deposits. He was the only person who was authorized to draw checks against the bank account.

During the latter part of the year 1935, Ruark contacted appellant and sold to him certain oil leases. Thereafter, appellant purchased mining stock and made various investments at the instance of Ruark. All of the leases and stock purchased by appellant were paid for by checks drawn against the company's bank account. Appellant made the checks payable to Ruark, and then, to cover up the transaction, Ruark issued his personal checks payable to the warehouse company, and they were kept by appellant in the office cash box. An audit of the company's books and records disclosed that appellant had expended for his own use approximately twenty-six thousand dollars of the company's funds. He admitted the facts just related.

One of these checks, in the amount of two thousand dollars, executed by appellant on March 7, 1938, drawn against the company's account and made payable to Ruark, forms the basis for the charge laid in the information.

Appellant contends he is guilty, if at all, of the crime of embezzlement and not of larceny. This contention is founded upon the admitted fact that the funds of the company were appropriated after they were given into his lawful custody and exclusive control, appellant reasoning that the violation of the possession of those funds, as charged in the information, could not have occurred.

In this connection, our attention is called to the provisions of Rem. Rev. Stat., § 2601 [P. C. § 8944], the pertinent portions of which read:

"Every person who, with intent to deprive or defraud the owner thereof—

"(1) Shall take, lead or drive away the property of another; or . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation or as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . .

"Steals such property and shall be guilty of larceny."

The information clearly charges larceny under the first provision of § 2601.

There is an obvious distinction between the methods of committing larceny as defined by the statute under subds. (1) and (3).

"Generally, the crimes of embezzlement and larceny are recognized as distinct and separate crimes, even though in some jurisdictions embezzlement is denominated 'larceny.' In other jurisdictions, however, it has been held that the two crimes overlap and, under certain circumstances, are identical. The chief distinction between the two crimes lies in the manner of acquiring possession of the property. In embezzlement, the property comes lawfully into the possession of the taker and is fraudulently or unlawfully appropriated by him; in larceny, there is a trespass in the unlawful taking of the property. Embezzlement contains no ingredients of trespass, which is essential to constitute the offense of larceny. Moreover, embezzlement does not imply a criminal intent at the time of the original receipt of the property, whereas in larceny the criminal intent must exist at the time of the taking." 18 Am. Jur., Embezzlement, 572, § 3.

It is plain that the evidence presented to the jury was, if believed, sufficient to prove the commission of the crime of embezzlement. *State v. Krug,* 12 Wash. 288, 41 Pac. 126; *State v. Pierce,* 175 Wash. 523, 27 P. (2d) 1087; *State v. Comer,* 176 Wash. 257, 28 P. (2d) 1027.

The evidence, however, did not prove the crime of larceny as defined by subd. (1) of § 2601. In order to constitute larceny, there must have been, first, an unlawful acquisition of possession of the property with the intention at the time of taking it into possession to convert it to the taker's use, and second, an appropriation of the property by the one who took it.

To undertake a detailed discussion of all of the authorities cited by respondent in support of the conviction, would unduly extend this opinion and would serve no useful purpose. Suffice it to say that the many cited cases are not helpful in solving the question presented by this appeal.

Respondent urges, as we understand its contention, that appellant and his codefendant entered into a conspiracy to steal the funds of the warehouse company, that defendants were jointly informed against and were apprised of the charge against which they were to defend.

We agree that the information was sufficient to sustain a conviction of larceny, but we cannot hold that the evidence supported that charge. Appellant used for himself money rightfully in his possession and over which he alone had control. Ruark aided and abetted him. In so far as the evidence in this case is concerned, appellant was the principal and Ruark the accessory in committing the crime of embezzlement. *State v. Klein,* 94 Wash. 212, 162 Pac. 52; *State v. Thomas,* 156 Wash. 583, 287 Pac. 667.

The only contention advanced by respondent

which could properly form the basis for affirmance of the judgment of the trial court, rests upon the proposition that evidence was introduced sufficient to warrant a finding upon the part of the jury that appellant harbored a criminal intent at the time he acquired possession of and control over the particular two thousand dollars which the information charges him with having stolen; that the element of trespass, necessary to proof of the commission of the crime of larceny, was, therefore, established.

Careful examination of the evidence, construed in the light of the authorities to which our attention has been directed, leads us to the conclusion that the first essential of the crime of larceny was not proven in this manner. The record discloses that appellant was given the lawful custody and control of all the money and property of the warehouse company. It wholly fails to reveal any evidence from which the jury could infer that appellant harbored an intention to steal the particular two thousand dollars at the time he took it into his possession. The intent to appropriate the money to his own use came to appellant after it had been given into his lawful custody.

Appellant was charged with larceny and convicted of embezzlement. Such conviction cannot stand. It is in violation of Art. I, § 22 of the constitution of this state, the pertinent portion of which reads:

"In criminal prosecutions, the accused shall have the right to . . . demand the nature and cause of the accusation against him, . . ."

*State v. Gifford,* 19 Wash. 464, 53 Pac. 709.

It is inconsistent with the provisions of Rem. Rev. Stat., § 2057 [P. C. § 9270], which read, in part, as follows:

"The indictment or information must be direct and certain, as it regards:— . . .

"3. The particular circumstances of the crime charged, when they are necessary to constitute a complete crime."

In *State v. Diamond Ice & Storage Co.*, 105 Wash. 122, 177 Pac. 634, we used this language:

"We think, under our statute, Rem. Code, § 2057, requiring the information to be direct and certain, that the state is bound by the charge as made, and must prove the offense to have been committed as there alleged, in order to sustain a conviction. 1 Wharton, Criminal Evidence, § 92; 13 Ency. Evidence, 640; *State v. Gifford*, 19 Wash. 464, 53 Pac. 709; *State v. Morgan*, 21 Wash. 355, 58 Pac. 215."

We find our conclusion to be consonant with the great weight of authority in this country. Indeed, it represents the almost unanimous judgment of the courts of other jurisdictions in the interpretation of statutes similar to those which obtain in this state. The ensuing review of leading cases from other states confirms these statements and adds substantially to the reasoning already advanced in support of the decision at which we have arrived.

*People v. Dumar*, 106 N. Y. 502, 13 N. E. 325, is an early case strongly analogous to the case at bar. It affords persuasive arguments upon which to premise reversal of the judgment of the trial court in the instant case. The defendant, in the *Dumar* case, was accused of the crime of grand larceny by taking, stealing, and carrying away. The theory of the prosecution and of the evidence offered in support of conviction, tended to prove that defendant was guilty of the crime of obtaining personal property by false pretenses. As is true in this state under Rem. Rev. Stat., § 2601, the New York legislature had grouped together a number of offenses under one statute, denominating the whole as "larceny." Included with the offense known as

larceny under the common law, were the offenses of embezzlement and obtaining money under false pretenses. In reversing the judgment of conviction, the court in the *Dumar* case said, in part:

". . . but if the doctrine contended for by him [counsel for the people] as to the form of the indictment and evidence under it in cases of larceny committed in the various ways now known to the law, be admitted it would, in our opinion, not only lead us (1) to encounter known principles of natural justice which, in all criminal prosecutions entitle the accused 'to be informed of the nature and cause of the accusation' (Bill of Rights, § 14); (2) to wholly disregard the general current of judicial authority in this State; and (3) to put aside the plain and explicit directions of the statutes by which the matters here involved are now regulated (Penal Code and Code of Criminal Procedure, *infra*) . . .

"The indictment was for larceny as defined at common law, but concerning which, as above interpreted, no evidence was given, that crime, therefore, being left unproven, while the conviction was had upon proof of false representations, the making of which was not disclosed by the indictment. As to the act charged there was no proof; as to the act proved, no allegations. . . .

"The accused could not fail to understand, from the indictment, that he was charged with the crime of grand larceny. In that respect the Code was complied with. It stated, also, a particular act as constituting the crime. In that respect, also, the Code was complied with. The difficulty is that the act stated was not proven, and that the act proven was not stated. The objection that the proof varied from the crime charged in the indictment was, therefore, well taken. It related to substance and not form, and pointed to an imperfection which tended to prejudice the substantial rights of the defendant upon the merits. It must prevail. . . .

"The important difference between the former law and the present, so far as this case is concerned, is

that the court is no longer called upon to decide whether an offense is larceny, embezzlement or false pretenses, nor is justice liable to be defeated by too nice a discrimination. Each of these acts is larceny. But the general principle of pleading has not been substantially changed. Under either system an offense consists of certain acts done or omitted under certain circumstances, and under neither is any indictment sufficient which does not accurately and clearly allege all the ingredients of which the offense is composed, so as to bring the accused within the true meaning and intent of the statute defining the offense."

To the same effect are *People v. Bough,* 48 Hun 621, 1 N. Y. Supp. 298; *People v. Cohen,* 148 App. Div. 205, 27 N. Y. Cr. 1, 133 N. Y. Supp. 103, appeal dismissed (1914) 211 N. Y. 607, 105 N. E. 1092; and *People v. Cory,* 124 Misc. 532, 208 N. Y. Supp. 768.

A sustained line of early Massachusetts cases follows closely the reasoning and conclusions reached by the New York courts in *People v. Dumar, supra.* *Commonwealth v. Simpson,* 50 Mass. (9 Met.) 138; *Commonwealth v. King,* 63 Mass. (9 Cush.) 284; *Commonwealth v. O'Malley,* 97 Mass. 584; *Commonwealth v. Berry,* 99 Mass. 428, 96 Am. Dec. 767; *Commonwealth v. Hussey,* 111 Mass. 432; *Commonwealth v. Mead,* 160 Mass. 319, 35 N. E. 1125; *Commonwealth v. Flynn,* 167 Mass. 460, 45 N. E. 924, 57 Am. St. 472.

In holding in *Fulton v. State,* 13 Ark. (8 Eng.) 168, that an indictment for larceny cannot be sustained by evidence sufficient to establish the commission of the crime of embezzlement, even though the statute makes the punishment the same, the Arkansas court relies strongly upon *Commonwealth v. Simpson, supra.* Of similar import is *Kibs v. People,* 81 Ill. 599.

*State v. Burks* (1901), 159 Mo. 568, 60 S. W. 1100, involves an appeal from a conviction of grand larceny

under a charge of embezzlement. The conviction was reversed upon the theory that, as larceny was a different offense of a higher grade, and requiring additional proof, there had been an infringement of that clause of the Missouri constitution which provides that the defendant has a "right to demand the nature and cause of the accusation."

In the more recent case of *State v. Burgess* (1916), 268 Mo. 407, 188 S. W. 135, the court reversed a conviction in the situation wherein the defendant was charged and tried for embezzlement, but found by the jury to be guilty of larceny under an instruction authorizing such a verdict. In *Howland v. State,* 58 N. J. L. 18, 32 Atl. 257, the court declared unconstitutional a statute authorizing conviction of embezzlement under a charge of larceny. A similar question was presented in *Huntsman v. State,* 12 Tex. App. 619. In holding the statutory provision unconstitutional, the court specifically overruled prior Texas authority to the contrary.

For the foregoing reasons, we hold that, in the case at bar, the evidence adduced at the trial was not sufficient to prove the crime of larceny with which appellant was charged.

The judgment is reversed.

BLAKE, C. J., BEALS, MAIN, and ROBINSON, JJ., concur.