[No. 6629–1–III.   Division Three.   December 17, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v.
MARY MONK, *Appellant*.

*Chelsea C. Korte* and *Cone, Fraser, Gilreath & Korte,* for appellant.

*Joseph Panattoni, Prosecuting Attorney,* and *Thomas A. Haven, Deputy,* for respondent.

MᶜINTURFF, A.C.J.—Mary Monk appeals her jury conviction of second degree theft by deception. We affirm.

From 1978 until 1984, Ms. Monk was employed by the City of Ellensburg in various positions, including utility clerk. From September 1980 until November 1981, she accrued a utility bill of $926.35 for gas, electric, water and sewer services at her residence. She lived outside the City service area for about 7 months, then moved back into the city in June 1982. By February 1983, she owed the City $1,268.61 for utility services.

Using her knowledge as clerk, Ms. Monk transferred her account to a 900 number. The 900 file is usually reserved for customers in bankruptcy or no longer in service and is reviewed annually by the City Council, which decides on collection steps or write–offs. No delinquency notices are sent to 900 accounts.

Although City procedure calls for supervisory approval prior to transfers of accounts into 900 status, Ms. Monk made the transfer without approval and without indicating by name on the transfer form that it was her account. She also assigned the account a number other than that which the City had used to identify her billings.

About the time of the transfer, Ms. Monk moved to a new address in Ellensburg. She continued to incur utility bills there, but again made no payments. In late January 1984, her supervisors discovered she had made the unauthorized transfer and dismissed her. She was charged with second degree theft in that "between March, 1980 and February, 1983" she "obtain[ed] control over property and services of a value exceeding $250 . . . by color and aid of deception . . . in violation of RCW 9A.56.020(1)(b) and

RCW 9A.56.040(1)(a)."[1]

At trial, Ms. Monk testified about financial problems which prevented her from paying utility bills and that when she transferred her account to the 900 file, her intent was to pay it as soon as possible. A supervisor noted Ms. Monk had access to the computer and could have eliminated her account entirely. On cross examination, Ms. Monk admitted a salary increase of $500 a month as a result of a promotion in September 1983, but no payment was made on the bill until February 1984, which was after her dismissal. The jury returned a verdict of guilty.

First, Ms. Monk contends there was insufficient evidence from which a rationale trier of fact could find her guilty beyond a reasonable doubt of theft by deception. Specifically, she argues the State failed to prove she obtained control over any property or services or that the City otherwise relied on the alleged deception. We disagree.

As stated in RCW 9A.56.020(1)(b), "theft" means to obtain control over the property or services of another or the value thereof, by color or aid of deception, with intent to deprive him of such property or services. "Deception" is present when the defendant knowingly "[p]revents another from acquiring information material to the disposition of the property involved". RCW 9A.56.010(4)(c).

■ We hold the State proved the elements of theft by deception. By transferring her account to inactive status, Ms. Monk prevented the City from acquiring information that she was seriously delinquent. The City relied on the transfer: (1) she received utility services at her new resi-

---

[1]RCW 9A.56.020(1) provides in part:

"'Theft' means:

". . .

"(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; . . ."

RCW 9A.56.040(1) provides in part:

"A person is guilty of theft in the second degree if he commits theft of:

"(a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value; . . ."

dence when the City might otherwise have taken action because of the large arrearage; and (2) she effectively obtained control over the City's right to payment by "hiding" her account.

In so holding, we reject Ms. Monk's theory that her acts, if anything, constituted embezzlement rather than theft by deception. She cites *State v. Smith,* 2 Wn.2d 118, 121, 98 P.2d 647, 648 (1939), where the court noted the distinction between larceny and embezzlement:

> In embezzlement, the property comes lawfully into the possession of the taker and is fraudulently or unlawfully appropriated by him; in larceny, there is a trespass in the unlawful taking of the property.

The property here—the account receivable—was not lawfully in Ms. Monk's possession. In order to transfer her account, office procedure required her to secure the signed approval of one of her supervisors. She did not do so. These circumstances are sufficient to constitute a trespass or a taking as proof of theft by deception.[2]

Second, Ms. Monk maintains the evidence of her failure to pay utility bills incurred after the unauthorized transfer of her account was not properly admitted. When the State offered the evidence, her attorney stated: "The only objection I have is relevancy. It has nothing to do with the $1200." The prosecutor countered: "The State contends . . . that this is admissible under Rules of Evidence 404(b)." The court admitted exhibit 6 without comment.

Before a court rules on the admissibility of evidence

---

[2]Ms. Monk strongly argues that since the information specifies the theft occurred between March 1980 and February 1983, the charge against her was for theft of the actual services received during that period, not theft of the account receivable. However, the State's evidence was that the unauthorized transfer in February 1983 constituted the theft, not the receipt of the earlier services. Moreover, the record also indicates Ms. Monk understood it was the transfer of her account which precipitated the charge. While the information might have been more artfully drawn, it is not incorrect. The alleged theft, *i.e.,* the transfer, did occur within the time span specified, and she was not misled or prejudiced by the wording used. *Cf. State v. Gosser,* 33 Wn. App. 428, 435, 656 P.2d 514 (1982) (the court may permit an information to be amended if substantial rights of the defendant are not prejudiced).

under ER 404(b), it must balance the probative value of the evidence against its prejudicial effect. This balancing process must be part of the record. *State v. Jackson,* 102 Wn.2d 689, 694, 689 P.2d 76 (1984); *State v. Tharp,* 96 Wn.2d 591, 597, 637 P.2d 961 (1981). Such a record is lacking here. The State argues Ms. Monk failed to preserve this error for appeal when she failed to make a more specific objection to the evidence than "relevancy." However, even if we hold Ms. Monk made a proper objection, any error in admitting the evidence was harmless.

■■ "Evidentiary errors under ER 404 are not of constitutional magnitude." *Jackson,* at 695. Such "error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *Tharp,* at 599 (citing *State v. Cunningham,* 93 Wn.2d 823, 613 P.2d 1139 (1980)). Here, even without the evidence, it is not reasonably probable the jury's verdict would have been different. Other evidence supports an inference Ms. Monk intended to permanently deprive the City of the account, her express statement to the contrary notwithstanding. That is, she disguised her account at the time of the transfer by leaving her name off and giving it a different number. Moreover, unlawful intent is indicated by the lapse of 1 year following the transfer, during which she made no payment despite a substantial monthly salary increase.

■ Lastly, Ms. Monk asserts the closing argument of the prosecuting attorney was improper and denied her a fair trial. She relies on *State v. Case,* 49 Wn.2d 66, 71, 298 P.2d 500 (1956) which notes:

> "Fair trial" certainly implies a trial in which the attorney representing the state does not throw the prestige of his public office, information from its records, and the expression of his own belief of guilt into the scales against the accused.

*See also* CPR DR 7-106(C)(4) and *State v. Reed,* 102 Wn.2d 140, 145, 684 P.2d 699 (1984). *Case,* at page 72 also states the general rule that "improper argument cannot be

urged as error unless the aggrieved party had requested the trial court to correct it by instructing the jury to disregard it . . ." The only exception is "in cases where the misconduct has been so flagrant that no instruction could cure it." *Case,* at 72.

Ms. Monk cites several separate comments by the prosecutor which she argues imply his personal belief in her guilt. But trial counsel made no objection to these comments at the time, and did not request a curative instruction. An objection to the first of the prosecutor's statements would have given the court an opportunity to caution the prosecutor to refrain from such comments. Instead, counsel chose not to object. The comments do not constitute plain error. Thus, the exception is not applicable. We decline to consider Ms. Monk's objections for the first time on appeal.

The judgment of the Superior Court is affirmed.

MUNSON and THOMPSON, JJ., concur.