IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36836-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHANE ROBERT MALOTTE, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — The State of Washington convicted Shane Malotte with five crimes, from which he appeals only one conviction. He contends that the trial court should have delivered a jury unanimity instruction because the to-convict instruction for the crime of theft of a firearm allowed the jury to convict him on the basis of one of three independent acts and the State only presented sufficient evidence to convict him for one of the actions. We agree.

## FACTS

This prosecution arises from Shane Malotte's attack on and alleged theft of a firearm owned by Todd Griffith. Griffith lived outside Republic. Malotte resided in a nearby home.

On November 20, 2018, Todd Griffith purchased a bottle of Jim Beam. He did not desire to drink alone and visited the domicile of neighbor, Vera Hamilton, in order to share the spirits. Those present at the Hamilton home on Griffith's arrival included Hamilton; Payton, Hamilton's 14-year old son; Doris, Hamilton's 17-year old daughter; and the daughter's boyfriend, defendant Shane Malotte. Payton and Doris are pseudonyms. When he arrived, Griffith shared the Jim Beam with Shane Malotte. We do not know the volume of the Jim Bean bottle or whether Malotte, Griffith, or one or more others drank other liquor.

While imbibing in the neighboring residence, Todd Griffith joked with Doris and Payton. At least, Griffith characterizes his remarks as jokes. Griffith teased Payton about a neighbor missing money. Griffith asked the fourteen-year-old if he had "blown" the neighbor for the missing money. Todd Griffith grabbed Payton's head and pulled it toward Griffith's crotch. Vera Hamilton took offense to Griffith's comment and behavior and told Griffith to cease the lewd repartee. Payton left the gathering on the first level of the residence and walked to the home's second floor.

As the socializing progressed, Todd Griffith mentioned Doris' pregnancy and suggested that she be kicked in the stomach. Griffith then nudged Doris' leg, but did not kick her.

Shane Malotte and Todd Griffith played the entertaining game of body shots. After a few exchanged punches, Malotte complained that Griffith struck him in the head,

2

so Malotte hit Griffith harder. Malotte also complained that Griffith pulled a knife and swung the instrument at Malotte. Payton, who had returned downstairs, noticed no injuries on either of the game players. Griffith removed brass knuckles from his clothes and invited Doris to hit him with the knuckles in order to rejoin his nudging of her leg.

Doris, Shane Malotte, and Todd Griffith spoke about firearms. Doris commented that she had never shot a gun. Griffith volunteered to allow Malotte and Doris to utilize his SKS rifle for target shooting on Vera Hamilton's commodious rural land. Malotte, Griffith, and Doris, shot the rifle at targets. Payton and Vera Hamilton remained indoors.

At some unidentified time after target shooting, Todd Griffith's consciousness grew "dark." Report of Proceedings (RP) at 91-92. Payton, perhaps around the same window of time, heard a "poof." RP at 387. Payton peered out a window and saw a white cloud. Payton and his mother walked outside to discover the cause of the noise. Payton observed a chaotic scene that included a propane bottle and broken camping torch, which he believed caused the poof.

Todd Griffith awoke from his fog to sense a male kicking his head and his being struck with his rifle. An upset Doris stood nearby and commanded Griffith to lay on the ground. Shane Malotte yelled: "Say you're a bitch." RP at 100. Malotte aimed the rifle at Griffith. Griffith repeatedly sought to stand, but Malotte punched Griffith, kicked him with steel toed boots, and yelled for Griffith to remain on the ground until law enforcement arrived. Payton, from worry that Griffith might die, grabbed Malotte's arm

3

to attempt to stop him from striking Griffith. RP 394-95. Malotte told Payton to leave the area, which Payton did.

Vera Hamilton returned to inside her home, dialed 911, and summoned law enforcement. The struggle between Todd Griffith and Shane Malotte continued. Sheriff deputies responded to the scene within ten minutes. The beating then stopped. Doris handed Griffith's rifle, which rested against Griffith's truck, to Shane Malotte. Doris, Vera Hamilton, and Shane Malotte directed Payton to tell the deputies that he did not know Malotte's name. Malotte grabbed the gun and ran from the house toward a tree line.

As Ferry County Sheriff Deputy Matthew Kersten approached the Hamilton home, he saw a man running away. Kersten stopped his patrol car and pursued the sprinter. Doris, Vera Hamilton, and Payton yelled that Todd Griffith was attempting to steal Kersten's car. Deputy Kersten also heard gunshots. Because of the chaos, Deputy Kersten ended his pursuit of the runner and went to speak with Griffith. A badly beaten Griffith had a bloody face and swollen shut eyes. Kersten did not notice Griffith attempting to purloin the deputy's vehicle. Sheriff Deputy Kersten placed Griffith's hands in cuffs.

Ferry County Sheriff Deputies Talon Venturo and Christine Clark also arrived at the Vera Hamilton property. Hamilton, Payton, and Doris informed the deputies that each did not know the identity of the fleer. A groggy Todd Griffith also did not tell the

4

officers at that point who had run away. Deputies Kersten, Venturo, and Clark searched for the rifle, but could not find the weapon.

Shane Malotte, with Todd Griffith's rifle, returned to Vera Hamilton's house by early the next morning. In the coming days, Malotte stored the rifle in the loft of the home where he slept. Malotte sometimes carried the rifle with him outdoors. He obtained ammunition for the firearm and placed markings on the rifle. Griffith never spoke again to Malotte or any resident of the Hamilton home. During a search of Vera Hamilton's residence on November 29, 2018, sheriff deputies seized Todd Griffith's SKS rifle.

PROCEDURE

The State of Washington charged Shane Malotte with assault in the first degree, theft of a firearm, possession of stolen property in the third degree, unlawful possession of a firearm in the second degree, and possession of a controlled substance other than marijuana. During trial, the prosecution introduced pictures of the rifle recovered from the Hamilton residence. Todd Griffith identified the rifle as his gun. Griffith testified that the clip in one of the pictures belonged to his gun, but that the ammunition in the clip was not his. Griffith used brass ammunition, and the clip in the picture had green bullets. He testified that white markings were added to the rifle by someone else.

The trial court instructed the jury on the crime of theft of a firearm using a to-convict instruction that stated:

5

To convict the defendant of the crime of theft of a firearm, each of the following three elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about November 20, 2018, the defendant

(a) wrongfully obtained or exerted unauthorized control over a firearm belonging to another; or

(b) by color or aid of deception, obtained control over a firearm belonging to another; or

(c) appropriated a lost or misdelivered firearm belonging to another; and

(2) That the defendant intended to deprive the other person of the firearm; and

(3) That this act occurred in Ferry County in the State of Washington

If you find from the evidence that elements (2) and (3), and any of the alternative elements (1)(a), (1)(b), or (1)(c) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (1)(a), (1)(b), or (1)(c) has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any of the elements (1), (2), or (3), then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 132. Neither party objected to the instruction. The parties did not propose, and the court did not give a unanimity instruction for the theft of a firearm charge.

The jury acquitted Shane Malotte of assault in the first degree, but convicted him on the lesser included offense of assault in the second degree. The jury found Malotte guilty of the other charged crimes.

6

LAW AND ANALYSIS

Shane Malotte assigns only one error on appeal. Malotte contends that the State presented insufficient evidence of two of the three alternative means by which theft of a firearm can occur. He argues that, because the trial court failed to instruct the jury in a unanimity instruction, the conviction must be reversed. The State responds that sufficient evidence supported all the means and, therefore, no such instruction was required.

The Washington Constitution guarantees criminal defendants the right to a unanimous jury verdict. *State v. Woodlyn*, 188 Wn.2d 157, 162, 392 P.3d 1062 (2017); WASH. CONST. art. I, § 21. A trial implicates this right when a charged crime lists alternative means for its commission. The court must then ask whether the jury must unanimously rule on whether the accused committed one of the particular means listed by the charging statute or whether the jury may adjudge the defendant guilty of the crime despite not unanimously agreeing to the particular means.

When a crime has alternative means of commission, and sufficient evidence supports each of the means, a defendant does not have a right to have the jury express unanimity as to the method of commission. *State v. Woodlyn*, 188 Wn.2d at 164 (2017). If sufficient evidence does not support any of the alternative means, however, "a 'particularized expression' of jury unanimity as to the supported means is required." *State v. Woodlyn*, 188 Wn.2d at 164. We must reverse a general verdict "if it is impossible to *rule out the possibility* the jury relied on a charge unsupported by sufficient

evidence." *State v. Woodlyn*, 188 Wn.2d at 165; *State v. Wright*, 165 Wn.2d 783, 803 n.12, 203 P.3d 1027 (2009). Lack of evidence to support a charge does not demonstrate that a member of the jury did not rely on that means. *State v. Woodlyn*, 188 Wn.2d at 165-66.

The parties agree that theft of a firearm is an alternative means crime. We agree. *State v. Linehan*, 147 Wn.2d 638, 647, 56 P.3d 542 (2002); *State v. Woodlyn*, 188 Wn.2d at 163; *State v. Lee*, 128 Wn.2d 151, 157, 904 P.2d 1143 (1995). Because theft of a firearm incorporates the same alternative means of theft of other property, unanimity is required for a conviction of theft of a firearm when insufficient evidence supports one of the means submitted to the jury.

RCW 9A.56.300 declares, in relevant part:

> (1) A person is guilty of theft of a firearm if he or she commits a theft of any firearm.
> . . . .
> (4) The definition of "theft" and the defense allowed against the prosecution for theft under RCW 9A.56.020 shall apply to the crime of theft of a firearm.

In turn, RCW 9A.56.020 reads:

> (1) "Theft" means:
> (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
> (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or

8

(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services.

Shane Malotte's trial court instructed the jury to convict Malotte of theft of a firearm under any of the three definitions of theft.

We must determine if the State's evidence supported all three alternative grounds for committing theft of a firearm. Shane Malotte agrees that the State presented sufficient evidence of his wrongfully obtaining control over Todd Griffith's rifle. So we address whether the State presented sufficient evidence under subsections (b) and (c) of the theft statute.

A claim of insufficient evidence requires this court to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilty beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Salinas*, 119 Wn.2d at 201.

RCW 9A.56.020(1)(b) references employing "color or aid of deception to obtain control over the property" of another to constitute theft. "By color or aid of deception" is defined by RCW 9A.56.010(4) to mean:

that the deception operated to bring about the obtaining of the property or services; it is not necessary that deception be the sole means of obtaining the property or services.

9

An actor commits an act of deception when he or she knowingly, among other things:

> (a)  Creates or confirms another's false impression which the actor knows to be false; or
> (b)  Fails to correct another's impression which the actor previously has created or confirmed; or
> (c)  Prevents another from acquiring information material to the disposition of the property involved. . . .

RCW 9A.56.010(5).

The State presented no evidence that Shane Malotte sought to deceive Todd Griffith or impose a false impression on him.  The State identifies no information that Malotte sought to conceal from Griffith in order to steal his rifle.

The State underscores that Shane Malotte told Payton Hamilton not to reveal his identity, and then Malotte fled from Deputy Matthew Kersten.  The State asserts that the jury could infer that Malotte, by inducing Payton to conceal his identity, created a false impression.  He then used this impression to prevent Todd Griffith from obtaining information related to the firearm.

Shane Malotte may have implored others to deceive law enforcement into believing that they did not know the name of the individual fleeing the Hamilton property.  But the connection between this act of deception and the taking of the rifle is tenuous.  Doris handed Malotte the gun, and he ran.  He did not gain possession of the gun by deception of the sheriff deputies, let alone deception of Todd Griffith.  The law

10

supports a conviction for theft by deception if the owner of the property relied on false representations, which operated to induce the victim to part with the property. *State v. Mehrabian*, 175 Wn. App. 678, 701, 308 P.3d 660 (2013), *abrogated on other grounds by State v. Schwartz*, 194 Wn.2d 432, 450 P.3d 141 (2019). Griffith did not part with his rifle because of any deception.

The State emphasizes that Shane Malotte secreted the SKS rifle in his loft and scratched his own markings on the rifle. The State argues that, by doing so, Malotte employed deception. The State forwards *State v. Monk*, 42 Wn. App. 320, 322-23, 711 P.2d 365 (1985) as standing for the proposition that, by obscuring identifying information, one perpetrates theft by deception. In *State v. Monk*, this court found Mary Monk guilty of theft by deception when she used her position as a utility clerk to move her account into those files reserved for inactive accounts or bankruptcy accounts. During this time, she received utility services without making payment. This court held that, by hiding her account, she obtained control over the city's right to payment.

Shane Malotte may have hid the SKS rifle, and he may have placed identifying marks on the gun. But he did not hide or mark the rifle until after the appropriation of the weapon. Many thieves hide stolen property or take steps to render recapture of the purloined goods difficult. If we followed the State's logic, most, if not all, thefts could be classified as theft by deception.

11

Although we must reverse the conviction of Shane Malotte if we resolve that the State failed to present sufficient evidence for only one of the three alternative means, we also conclude that the State presented insufficient evidence that Malotte appropriated lost or misdelivered property of another under RCW 9A.56.020(1)(c). Under RCW 9A.56.010(2):

> "Appropriate lost or misdelivered property or services" means obtaining or exerting control over the property or services of another which the actor knows to have been lost or mislaid, or to have been delivered under a mistake as to identity of the recipient or as to the nature or amount of the property.

Property is lost when the owner has parted with possession unwittingly and no longer knows its location. *State v. Kealey*, 80 Wn. App. 162, 171, 907 P.2d 319 (1995). Property is mislaid when the owner intentionally puts it in a particular place, then forgets and leaves it. *State v. Kealey*, 80 Wn. App. at 171.

The State contends that the evidence established that Todd Griffith lost the firearm. According to the State, Griffith, after setting the rifle aside, lost its location or unwittingly forgot the rifle when he left the Hamilton property. We do not consider this argument a reasonable interpretation of the facts. After target practice, Todd Griffith's firearm remained in Vera Hamilton's yard. Shane Malotte then used the gun to assault Griffith. When law enforcement arrived, Griffith lost the location of the gun because Malotte ran with it. Griffith had not earlier lost the rifle. If we accepted the State's

12

contention, any theft would be the result of a lost or mislaid article of property. After the purloining, the victim does not know the location of his property.

CONCLUSION

Because the State failed to provide sufficient evidence to support at least one of the three alternative means of theft announced to the jury, we reverse Shane Malotte conviction for theft of a firearm. We remand for a new trial on the charge.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Siddoway, J.